641 So.2d 1203 (1994)
Gloria J. GREEN
v.
Mary B. GRANT.
No. 91-CA-01020.
Supreme Court of Mississippi.
August 18, 1994.
*1204 Leslie D. King, Greenville, for appellant.
Joseph L. McCoy, Diane V. Brantley, McCoy Wilkins Stephens & Tipton, Jackson, for appellee.
Before PRATHER, P.J., and BANKS and SMITH, JJ.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION.
This case is appealed from the Circuit Court of Hinds County, Mississippi, First Judicial District. After a trial on the issue of damages resulting from a automobile accident involving the Appellant, Gloria J. Green (Green) and the Appellee, Mary B. Grant (Grant), the jury awarded Green damages in the amount of $2,000.00. Thereafter, Green filed a Motion for New Trial, or Alternately, for Additur which was subsequently denied by the circuit judge. Following the denial of this motion, Green filed her Notice of Appeal to this Court assigning as error the following:
THE TRIAL COURT ERRED IN DENYING THE MOTION OF THE APPELLANT, GLORIA J. GREEN, FOR A NEW TRIAL ON DAMAGES OR ALTERNATIVELY FOR AN ADDITUR AS A JURY VERDICT IN THE AMOUNT OF $2,000.00 AS DAMAGES WAS GROSSLY INADEQUATE AND SHOULD HAVE SHOCKED THE CONSCIENCE OF THE COURT AND INDICATED BIAS, PREJUDICE AND PASSION ON THE PART OF THE JURY AND THAT THE VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE.

II. STATEMENT OF THE FACTS.
The facts of this case originated in an automobile accident involving Green and Grant at the intersection of Grand Avenue and Prentiss Street in Jackson, Mississippi, on the afternoon of April 17, 1989. Thereafter, on April 9, 1990, Green filed a Complaint against Grant, alleging that it was negligence on the part of Grant that caused the accident and praying for damages that she claims she suffered as a result of that accident. Grant admitted liability for the accident and on July 19, 1990, the circuit judge entered a judgment on the issue of liability in favor of Green and against Grant. A trial on the issue of damages was held in the Circuit Court of the First Judicial District of Hinds County on July 2, 1991. At trial Green presented testimony as to the amount of damages that she had suffered as a result of the accident while Grant introduced evidence refuting the necessity and reasonableness of the amounts claimed by Green.
Prior to the testimony of any witnesses, the parties stipulated that Green incurred $2,118.25 in medical expenses, however, Grant did not stipulate that these expenses were necessary. The first witness to testify was the Appellant, Green. Green is employed by the Mississippi Department of Rehabilitation Services and serves as the director of the Disability Determination Service. However, at the time of the accident she was employed as a special assistant attorney general with the Mississippi Attorney General's Office.
Green testified that she was involved in an automobile accident with Grant at the intersection of Grand Avenue and Prentiss Street in Jackson, Mississippi. As a result of this accident Green said she suffered injuries to her head, right knee, shoulders, neck, and *1205 upper and lower back. Green stated that when she got out of her car following the accident she had a pain in her head and her knee was aching. She testified that after the accident, she, Grant, and another person walked from the cars to the end of the corner to look for a police officer. Also, following the accident, Green drove her car back to her office to call and cancel her afternoon appointments. She also telephoned a friend and sorority sister, Barbara Hamilton, to tell her about the accident. Hamilton encouraged her to go to the emergency room and have someone check her for injuries. Hamilton then picked Green up and took her to the emergency room at Mississippi Baptist Medical Center (MBMC). Green was treated at the emergency room by Dr. William P. Burk. Green testified that on the morning following the accident she began to feel stiffness in her neck, shoulders, and back.
The next week Green went to see Dr. Earnest Rankin. She was referred to Dr. Rankin by her lawyer. However, she stated that her lawyer referred her to a doctor because she was not from Jackson and did not know which doctor to contact. She went to see Dr. Rankin because her knee was still swollen and sore, she was experiencing headaches, and she would sometimes feel nauseated and dizzy. Green returned to MBMC on July 16, 1989, because of headaches that she was experiencing.
Green stated that she continues to have knee problems "off and on," especially when she is in a rush. She said her headaches are infrequent, but her lower back does hurt occasionally. Green said that she last took any pain medication for these injuries in December of 1989. Green described her health prior to the accident as "excellent." She said that she only went to the doctor for yearly check-ups and that she did not experience headaches prior to the accident. Also, both Green and Hamilton testified that before the accident Green exercised quite a bit, but has been unable to do so since the accident.
Green testified to the following medical expenses that she claims she incurred as a result of this accident:

 Dr. Earnest Rankin $ 685.00
 Dr. Edward James 175.00
 Healthsouth Rehabilitation 500.00
 MBMC 353.25
 St. Dominic Hospital 250.00
 Lakeland Radiologists, P.A. 190.00
 Radiological Group 46.00
 _________
 TOTAL $2,199.25

(However, the parties stipulated that her medical expenses were $2,118.25.)
In addition to these medical expenses, Green testified that from April, 1989, through September, 1989, she was forced to miss 76 hours of work as a direct result of her injuries. By virtue of missing these 76 hours of work, she lost $1,330.58.
Sarah DeLoach also testified on behalf of Green. DeLoach was Green's supervisor at the Attorney General's Office. DeLoach described Green as a "very conscientious worker" who did not miss very much work at all. DeLoach testified that after the accident the pain bothered Green and she was unable to concentrate like she wanted. Also, DeLoach agreed that following the accident Green did not function as efficiently as she previously had. Further, DeLoach stated that as far as she knew, the days that Green took off from work were attributable to her injuries.
Dr. Earnest Rankin, who treated Green from April, 1989, until September, 1989, also testified on Green's behalf. He first examined Green in his office on April 21, 1989. He then saw Green on seven (7) subsequent occasions. On initial examination, he found that she had soreness over her forehead on direct pressure, however, there was no indication of broken bones in the skull. He saw no changes in her eyes that would be consistent with a hemorrhage or increased intracranial pressure. However, he did find a number of muscle spasms and soreness in her neck muscles. Also, when Green tried to turn her head to the side she would experience an increase of pain in the neck area. He found soreness in the muscle surrounding the neck and the upper part of her back. In addition, she suffered discomfort when she tried to elevate her arm above the shoulder level. Green also experienced soreness and tenderness in her right knee. However, Dr. Rankin found no evidence of neurological injury or muscle wasting. He treated Green *1206 with a muscle relaxer tablet, a narcotic analgesic for her headache, and a heating pad. Dr. Rankin testified that injuries such as Green's are in many instances painful. He also said that with some patients these injuries are quick to heal and with some patients they are not. Dr. Rankin stated that because of persistent pain in her knee, he referred Green to Dr. Edward James, an orthopedic specialist. Dr. Rankin testified that Dr. James evaluated Green from June through September of 1989. Dr. James ordered a CT Scan on Green's right knee. The results of this scan were normal.
Dr. Rankin also testified that in his opinion, Green has developed a type of traumatic arthritis as a result of the trauma suffered in the accident. He said this condition will progress and get worse and that traumatic arthritis is just as painful as any other type of arthritis.
Following Green's office visit of September 29, 1989, Dr. Rankin wrote Green's attorney a report dated October 16, 1989. In this report, Dr. Rankin wrote that Green's right knee pain had subsided and that she was walking normally without any limp or unstable gait. His report stated that her right knee was "non-swollen" and "non-tender." He also wrote that her right knee showed a normal range of motion without any restriction. He advised Green to resume her normal activities and did not place any restrictions on her activities. He also told Green to return to his office if she felt the need. Green did not return to his office in 1989 after her September 29, 1989 visit. She did not return at all in 1990 and she did not return in 1991 until June 20, 1991, which was approximately two weeks before this trial. She returned on this occasion complaining of pain in her right knee.
Dr. Rankin testified that, in his professional opinion, Green's injuries were caused by the trauma that she sustained in the accident. Finally, Dr. Rankin testified that all of the treatments prescribed by him were reasonable and necessary and that all of the treatments provided by Dr. James were necessary and as far as he knew they were reasonable.
Grant testified on her own behalf at trial and in her testimony she again acknowledged that the accident was her fault. At the time of the accident, Grant had two of her children in the car with her. Grant testified that immediately after the accident Green checked on them and then went to try to find a police officer. Grant testified that she and Green stood in the street and talked until the police arrived and she never heard Green complain about anything. Grant said that no ambulance ever came to the scene of the accident. Grant also stated that after the accident both vehicles were in a drivable condition and that Green drove her car away from the scene of the accident. Finally, Grant testified that neither she nor her children went to the emergency room, nor have any of them ever gone to the doctor as a result of this accident.
Dr. William P. Burk also testified on behalf of Grant at trial. He is a board certified Emergency Medicine Specialist and had been an emergency room physician for 11 years at the time of the trial. He is the director of the Emergency Department at MBMC and also served as the medical director of the Hinds and Madison County Ambulance Service. Dr. Burk was tendered and accepted by the court as a "specialist in emergency room medicine."
Dr. Burk first saw Green in the emergency room at MBMC on April 17, 1989. When she arrived, Green complained of a headache and knee pain. Dr. Burk conducted an examination of Green. Upon examination, Dr. Burk found Green to be alert, oriented, and able to move around under her own power without any type of assistance. Green's head showed a slight tenderness in the anterior scalp area. Green showed no signs of bleeding at all. Examination of her neck was unremarkable as it showed no signs of tenderness or deformity. Her chest and abdomen were likewise non-tender. She had a slight bruise on the skin right over her knee cap. However, the ligaments in her knee were stable and she did not appear to have any cartilage or ligament injury. She had a full range of motion in her knee. The examination of her nervous system was normal and there was no evidence of a concussion. His diagnosis was *1207 "knee contusion" and "head injury." However, Dr. Burk qualified this by stating that the only evidence he found of a head injury was that when he pressed on her forehead, Green complained of tenderness. He also described the bruise over Green's knee as only a "slight" bruise. Dr. Burk did not prescribe any medication for Green because he said that he felt that she really did not need any. He did give her an ACE bandage for her knee. He said that if he had been concerned about any ligament or cartilage damage, he would have prescribed a more elaborate splint. Dr. Burk also said that he felt that Green could have gone immediately back to work from the emergency room. He said that although you never know, he "didn't think that her injuries were severe and that she should do quite well." Dr. Burk also said that he did not refer Green to an orthopedist or a neurosurgeon because her problems were not significant enough to require the services of a specialist.
Dr. Burk testified that Green was treated by his medical partner when she returned to MBMC on July 16, 1989. He said that the records showed she was complaining of a headache. Dr. Burk said that it would be unusual for her headache in July to be related to the accident in April. He further said that the history obtained by the nurse on Green's July 16, 1989, visit indicated that her headaches began three days prior to the visit and she also had the sniffles and a runny nose. Dr. Burk also testified that it would be improbable that Green would develop traumatic arthritis as a result of this accident.
Dr. Burk said that he took exception and disagreed with Dr. Rankin's findings in this case. He said that he could not make sense of Dr. Rankin's findings. He said from his experience he has never seen someone with an examination such as Green's in the emergency room to later have injuries develop to such a degree as outlined by Dr. Rankin. However, he did note that he would like more information.
Following this trial, the jury awarded Green damages in the amount of $2,000.00. Green then filed a motion entitled, "Motion for a New Trial or Alternately for Additur." The circuit judge denied this motion. Thereafter, Green filed her Notice of Appeal to this Court.

III. ANALYSIS.

THE TRIAL COURT ERRED IN DENYING THE MOTION OF THE APPELLANT, GLORIA J. GREEN, FOR A NEW TRIAL ON DAMAGES OR ALTERNATIVELY FOR AN ADDITUR AS A JURY VERDICT IN THE AMOUNT OF $2,000.00 AS DAMAGES WAS GROSSLY INADEQUATE AND SHOULD HAVE SHOCKED THE CONSCIENCE OF THE COURT AND INDICATED BIAS, PREJUDICE AND PASSION ON THE PART OF THE JURY AND THAT THE VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE.
On appeal, Green asserts that the jury's award to her of damages in the amount of $2,000.00 was so inadequate as to both indicate bias, prejudice, or passion on the part of the jury, and was contrary to the overwhelming weight of the evidence. She therefore argues that the trial judge erred in denying her Motion for a New Trial on Damages, or in the Alternative, for an Additur. On the other hand, Grant submits that the jury's damage award is supported by the evidence presented at the trial. Thus, Grant contends that the trial judge did not abuse his discretion in denying Green's motion.
With regard to a motion for a new trial, this Court has said:
The grant or denial of a motion for a new trial is and always has been a matter largely within the sound discretion of the trial judge. [citations omitted] The credible evidence must be viewed in the light most favorable to the non-moving party. The credible evidence supporting the claims or defenses of the non-moving party should generally be taken as true. When the evidence is so viewed, the motion should be granted only when upon a review of the entire record the trial judge is left with a firm and definite conviction that the verdict, if allowed to stand, would work *1208 a miscarriage of justice. Our authority to reverse is limited to those cases wherein the trial judge has abused his discretion.
Anchor Coatings, Inc. v. Marine Industrial Residential Insulation, Inc., 490 So.2d 1210, 1215 (Miss. 1986). See Motorola Communications & Electronics, Inc. v. Wilkerson, 555 So.2d 713, 723 (Miss. 1989).
A court's authority to order an additur is found in Miss. Code Ann. § 11-1-55 (1972), which reads as follows:
§ 11-1-55. Authority to impose condition of additur or remittitur.
The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.
Miss. Code Ann. § 11-1-55 (1972). Therefore, pursuant to the above statute, an additur can be awarded by the court finding either: (1) the jury or trier of fact was influenced by bias, prejudice, or passion, or (2) the damages awarded were contrary to the overwhelming weight of credible evidence. Rodgers v. Pascagoula Public School Dist., 611 So.2d 942, 944 (Miss. 1992); Leach v. Leach, 597 So.2d 1295, 1297 (Miss. 1992); Biloxi Electric Co., Inc. v. Thorn, 264 So.2d 404, 405 (Miss. 1972). This Court discussed these two standards in Odom v. Roberts, 606 So.2d 114 (Miss. 1992), and said:
Though stated in different terms, these two standards have long been regarded as saying essentially the same thing. The overwhelming weight of credible evidence standard is an objective one. Trial courts apply this standard by reference to the law on recoverable damages when applied to the evidence before them. We review such matters on appeal for abuse of discretion. The bias, prejudice or passion standard is a purely circumstantial one. Obviously we will have no way of knowing what was in the jury's mind. What we do though is have our trial courts look at the amount of the verdict and, by comparison of the evidence, in certain cases hold that the amount is so low that it could only have been returned by a jury influenced impermissibly by a bias, prejudice or passion.
Odom, 606 So.2d at 119-20 n. 5.
Each case involving the issue of an additur must "necessarily be decided on its own facts." Leach, 597 So.2d at 1297. The scope of review that this Court employs in considering an additur appeal is limited to "determining whether the trial court abused its discretion." Rodgers, 611 So.2d at 945. The Court, in Rodgers, further said:
This Court has further noted that the party seeking the additur has the burden of proving his injuries, damages and loss of income. In determining whether this burden is met, this Court must view the evidence in the light most favorable to the defendant, giving that party all favorable inferences that reasonably may be drawn therefrom.
Id. See also, Flight Line, Inc. v. Tanksley, 608 So.2d 1149, 1161 (Miss. 1992); Leach, 597 So.2d at 1297; Hill v. Dunaway, 487 So.2d 807, 811 (Miss. 1986).
An additur should never be applied without taking great caution, for an additur represents "a judicial incursion into the traditional habitat of the jury." Gibbs v. Banks, 527 So.2d 658, 659 (Miss. 1988). Further, "[a]wards fixed by jury determination are not merely advisory and will not under the general rule be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." Rodgers, 611 So.2d at 945. See also, City of Jackson v. Ainsworth, 462 So.2d 325, 328 (Miss. 1984); *1209 Toyota Motor Co., v. Sanford, 375 So.2d 1036, 1037-38 (Miss. 1979).
Generally, "the only evidence of corruption, passion, prejudice or bias on the part of the jury is an inference, if any, to be drawn from contrasting the amount of the verdict with the amount of the damages." Thorn, 264 So.2d at 406. See Rodgers, 611 So.2d at 944-45; Pham v. Welter, 542 So.2d 884, 888 (Miss. 1989); Ainsworth, 462 So.2d at 328. In the instant case, the extent of Green's injuries, and the amount, reasonableness and necessity of her damages are disputed by the parties. "When testimony is contradicted, this Court will defer to the jury, which determines the weight and worth of testimony and the credibility of the witness at trial." Odom, 606 So.2d at 118 (citing Stubblefield v. Walker, 566 So.2d 709, 712 (Miss. 1990) and Motorola, 555 So.2d at 723). With regard to the reasonableness and necessity of medical expenses, Miss. Code Ann. § 41-9-119 (1972), provides:
§ 41-9-119. Evidence of reasonableness of medical expenses.
Proof that medical, hospital, and doctor bills were paid or incurred because of any illness, disease, or injury shall be prima facie evidence that such bills so paid or incurred were necessary and reasonable.
Miss. Code Ann. § 41-9-119 (1972). In discussing the above statute, this Court in Jackson v. Brumfield, 458 So.2d 736 (Miss. 1984), said, "[w]hen a party takes the witness stand and exhibits bills for examination by the court and testifies that said bills were incurred as a result of the injuries complained of, they become prima facie evidence that the bills so paid or incurred were necessary and reasonable. However, the opposing party may, if desired, rebut the necessity and reasonableness of the bills by proper evidence. The ultimate question is then for the jury to determine." Jackson, 458 So.2d at 737 (emphasis added). Here, in the instant case, Grant, especially through the testimony of Dr. Burk, refuted that the medical treatments and expenses incurred by Green were reasonable and necessary.
In the instant case, the court instructed the jury to consider the following elements in determining the amount of Green's damages:
1. The nature and type of injury and its duration;
2. Past pain, present pain and future pain if any;
3. Reasonable medical expenses incurred;
4. Reasonable expenses of physical therapy; and
5. Lost wages resulting from her injury.
Green presented evidence that she has incurred medical expenses in the amount of $2,199.25. (Medical expenses were stipulated as being $2,118.25). Both the necessity and reasonableness of these expenses were testified to by Green's doctor, Dr. Rankin. She also claims to have missed 76 hours of work as a direct result of this accident representing lost income to her in the amount of $1,330.58. In addition, Green and those testifying on her behalf testified about the pain and suffering that she has experienced, and will continue to experience, as a result of this accident.
On the other hand, testimony presented on behalf of Grant tended to prove that Green was not seriously injured at all as a result of this accident. This testimony, especially that of Dr. Burk, was to the effect that the medical expenses and loss of income claimed by Green as a result of this accident were neither reasonable nor necessary. Therefore, this conflicting testimony and evidence appears to have created an issue on the amount of damages for the jury to decide. As discussed previously, determination of damages made by a jury are not to be set aside lightly. Again, the instant case is one in which the issue of the extent of Green's injuries, the reasonableness and necessity of her medical expenses, and the reasonableness and necessity of her lost income were seriously contested. The jury resolved this issue by finding that Green was entitled to damages in the amount of $2,000.00 as a result of this automobile accident caused by Grant.
Viewing the conflicting evidence presented in the instant case, the verdict does not appear to be either against the overwhelming weight of the evidence or so inadequate as to evidence bias, passion, or prejudice on the *1210 part of the jury. Therefore, this Court holds that the circuit judge did not abuse his discretion in the instant case and that his decision to deny Green's Motion for a New Trial on Damages, or in the alternative, for an Additur should be upheld. Thus, this case is hereby affirmed.
JUDGMENT IS AFFIRMED.
HAWKINS, C.J., and SULLIVAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J.
PITTMAN, J., not participating.
McRAE, Justice, dissenting:
Today's majority opinion follows the general tendency of this Court to favor remittitur and to eschew additur. Nevertheless, the decision strikes me as being inconsistent with our findings in Rodgers v. Pascagoula Public School District, 611 So.2d 942 (Miss. 1992), where we granted an additur doubling a jury verdict which had limited the plaintiff's recovery to the exact amount of his medical expenses. Contrary to the majority's opinion, the circuit court erred in failing to grant Green's motion for a new trial on the issue of damages, or in the alternative, for an additur. Because the jury awarded Green less than her stipulated medical expenses, this case should be reversed and remanded for reconsideration of damages. Accordingly, I dissent.
The parties stipulated that Green incurred $2,118.25 in medical expenses. The extent of her injuries and the necessity of the medical treatment she received, however, was disputed. Nevertheless, we have stated that "[a] stipulated fact is one which both parties agree is true," and further, that "factual stipulations set boundaries beyond which this Court cannot stray." Wilbourn v. Hobson, 608 So.2d 1187, 1189 (Miss. 1992). In Wilbourn, we recited the proposition that "`[c]ourts are bound to enforce stipulations which parties may validly make, where they are not unreasonable or against good morals or against public policy." Id. at 1189, quoting 83 C.J.S. Stipulations § 17 (1953). Apparently the majority does not perceive stipulated damages as the sort of stipulations to be enforced by this Court, at least when those damages are in excess of a jury award.
We have held that "inherently probable, reasonable, credible and trustworthy testimony uncontradicted by the evidence must be accepted as true." James v. Mabus, 574 So.2d 596, 600 (Miss. 1990) (emphasis added). A stipulation of medical expenses likewise had to be accepted by the jury as true. The parties' stipulation that these expenses resulted from the accident were uncontradicted, meeting the test set forth in James. Thus the jury was provided with a minimum floor upon which to build its calculation of Green's damages. Dr. Burk's testimony adds no support to Grant's argument; he treated Green only when she was admitted to the emergency room. Further, neither he nor any other witness specifically refuted the amount or reasonableness of any of the medical bills included in the stipulation.
When considering additur and remittitur, we should not forget that "[a]dditurs represent a judicial incursion into the traditional habitat of the jury, and therefore should never be employed without great caution." Rodgers v. Pascagoula Public School District, 611 So.2d 942, 945 (Miss. 1992); Gibbs v. Banks, 527 So.2d 658, 659 (Miss. 1988). This has not prevented us from reforming a jury verdict for damages, even when the plaintiff's claims were tenuous. In Rodgers, we ordered a new trial on the issue of damages unless the School District accepted an additur of $11,765.50 to the jury's award of $11,765.50 to Rodgers, doubling his recovery to $23,531.00.
While the majority belabors the facts of the case sub judice, it fails to recognize the similarities to the facts in Rodgers. Rodgers was involved in a minor collision with a school bus. After the accident, he continued with his sister on their errands, only seeking treatment at the emergency room later in the day. The extent of his injuries is disputed. As with Green's head and knee injuries, the emergency room physician "did not find any visible signs of trauma or any indication of a concussion." Rodgers, 611 So.2d at 942. There was only a bruise on the right side of *1211 his head. He was given pain medicine, but claimed that he continued to suffer headaches and backaches. Over the next few months, he visited a variety of specialists, none of whom found any evidence of brain damage. Id. at 944. He was diagnosed variously as suffering from post-traumatic headaches, post-traumatic pain syndrome and post-concussive syndrome. Id. Similarly, Green's doctor found that she suffered from a variety of post-traumatic maladies including muscle spasms, muscle pain and traumatic arthritis. Her doctors, likewise, prescribed muscle relaxers and pain medication.
Rodgers' medical bills totalled $11,762.50. Further, he presented evidence that he suffered a forty percent (40%) permanent whole body impairment as well as pain and suffering. The jury awarded him $11,762.50, exactly the amount of his medical bills. Writing for the majority, Justice Pittman found that "[a] jury verdict awarding damages for medical expenses alone is against the overwhelming weight of the evidence." Rodgers, 611 So.2d at 945. When the damages awarded are contrary to the overwhelming weight of credible evidence or the verdict was influenced by bias, prejudice or passion, this Court has the authority to impose an additur. Miss. Code Ann. § 11-1-55 (1972); Rodgers, 611 So.2d at 944; McIntosh v. Deas, 501 So.2d 367, 369-370 (Miss. 1987). In granting the additur, the majority in Rodgers considered Rodgers' pain and suffering, "even if only headaches." Id. at 945.
Green and Grant stipulated that Green's medical bills totalled $2,118.25, exactly $118.25 less than the amount awarded her by the jury. Further she testified that she had missed seventy-six hours of work as a direct result of her injuries, losing some $1,330.58 in wages. If the jury verdict awarding Rodgers only the exact amount of his medical expenses was found to be against the overwhelming weight of the evidence, surely we must find similarly where the jury award is less than the stipulated amount of medical expenses incurred. To do otherwise would be inconsistent with our decision in Rodgers as well as a denial of our duty to enforce stipulations agreed upon by the parties. Accordingly, I dissent.
DAN M. LEE, P.J., joins this opinion.