## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-00335-SCT

*ANNE COOK INTERIOR DESIGNS AND DOROTHY A. COOK*

*v.*

*DANA SANDERS*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/28/97 |
| TRIAL JUDGE: | HON. ROBERT L. GOZA, JR. |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | STUART ROBINSON, JR. |
| | KENNETH C. MILLER |
| ATTORNEYS FOR APPELLEE: | DAVID BARIA |
| | ERIC STRACENER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 12/31/1998 |
| MOTION FOR REHEARING FILED: | 1/12/99 |
| MANDATE ISSUED: | 5/13/99 |

**BEFORE PRATHER, C.J., ROBERTS AND MILLS, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

¶1. This case arises from a car accident, which occurred August 21, 1992. The defendant admitted liability, and the only issue before the jury was the amount of damages. The jury awarded the plaintiff $5,000.00, and the trial judge later granted an additur of $22,500.00. The only issue on appeal is the propriety of the additur.

¶2. State statute permits additurs, "if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence." Miss. Code Ann. § 11-1-55 (Supp. 1991).

¶3. "The scope of review that this Court employs in considering an additur appeal is limited to 'determining whether the trial court abused its discretion.'" *Green v. Grant*, 641 So. 2d 1203, 1208 (Miss. 1994) (quoting *Rodgers v. Pascagoula Pub. Sch. Dist.*, 611 So. 2d 942, 945 (Miss. 1992)).

¶4. In addition, "the party seeking the additur has the burden of proving his injuries, damages and loss of income. In determining whether this burden is met, this Court must view the evidence in the light most favorable to the defendant, giving that party all favorable inferences that reasonably may be drawn therefrom."*Id.* (quoting *Rodgers*, 611 So. 2d at 945).

> Further, "[a]wards fixed by jury determination are not merely advisory and will not under the general rule be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." *Rodgers*, 611 So. 2d at 945. *See also, City of Jackson v. Ainsworth,* 462 So. 2d 325, 328 (Miss. 1984); *Toyota Motor Co., v. Sanford*, 375 So. 2d 1036, 1037-38 (Miss. 1979).

*Green*, 641 So. 2d at 1208-09.

> [T]his Court has the responsibility to see that [the] judicial discretion in trial judges is exercised soundly, or we will reverse.

* * *

> [T]his Court "will not hesitate to set aside the order [of additur] improvidently granted and to reinstate the verdict of the jury." *See Biloxi Electric Co. v. Thorn*, 264 So. 2d 404 (Miss. 1972).

*Mississippi State Highway Comm'n v. Antioch Baptist Church, Inc.*, 392 So. 2d 512, 514-15 (Miss. 1981).

¶5. The record indicates that the plaintiff, Sanders, had no visible injuries at the time of the accident, and stated that he was not hurt. He did not see a doctor until eleven days after the accident. His total medical bills were $1,579.50. There is evidence that, shortly after the accident, Sanders personally made some repairs to his car. However, there is no evidence regarding the cost of those repairs.

¶6. In addition, Sanders, who owned and managed properties, testified that, after the accident, he could not do some of the manual labor his job required. As a result, Sanders contended that he had to pay contractors $300.00-$500.00 per month to do this work. To the contrary, however, Sanders stated in his deposition that he continued to work after the accident. He also told one of his treating physicians that he was functioning fairly normally and performing such tasks as shoveling dirt. Sanders' physical activity was never restricted by a doctor.

¶7. The main question before the jury was whether the accident necessitated future surgery to re-sect Sanders' sternoclavicular joint.[1] The medical evidence indicated that Sanders had the joint surgically wired in 1958, and that subsequent complications developed in 1984, when it was discovered that the original surgical wires had loosened. Sanders also had longstanding arthritic degeneration in the joint, which pre-dated the accident. The evidence further indicated that Sanders may have required the surgery, regardless of the accident. The only evidence that the accident had aggravated the old injury was based on Sanders' own statements.

¶8. Given these facts, the $5,000.00 verdict was not against the overwhelming weight of the evidence, or so shocking to the conscience as to demonstrate bias, prejudice, or passion. Indeed, the jury could have believed that Sanders would require the expensive surgery, but that only a small portion of the cost of

surgery was due to the accident, because the need for the surgery was primarily pre-existing. "'When testimony is contradicted, this Court will defer to the jury, which determines the weight and worth of testimony and the credibility of the witness at trial.'" *Green*, 641 So. 2d at 1209 (quoting *Odom v. Roberts*, 606 So. 2d 114, 118 (Miss. 1992)).

¶9. Furthermore, the additur appears to have been granted based on the trial judge's pre-trial evaluation of the case, as well as his admitted "disgust" with the jury for only deliberating twenty minutes. Neither of these reasons are based on the evidence presented at trial. Therefore, the trial judge abused his discretion in granting the additur.

¶10. Prior to the trial, the circuit judge valued the case at $25,000.00-$35,000.00. The trial judge strongly recommended that the parties settle the case in that range. He told counsel that, if the verdict were less than that amount, he would grant an additur, and, if the verdict were more than that amount, he would grant a remittitur. In granting the additur, the trial judge stated, "[the defendant] didn't believe me obviously."

¶11. Furthermore, with regard to the length of jury deliberations, the trial judge said: "I tell you the truth, if they had stayed out another hour and returned the same verdict I would not consider the additur". "This Court has held that there is no formula to determine how long a jury should deliberate." *Smith v. State*, 569 So. 2d 1203, 1205 (Miss. 1990). Moreover, when questioned by the trial court, the jury foreman in the case *sub judice* stated, "We took our turn to speak around the table and suggested a settlement amount and decision and by a show of hands we reached the amount of the verdict." Under these circumstances, an additur based on the length of deliberations is an abuse of discretion.

¶12. "Additurs represent a judicial incursion into the traditional habitat of the jury, and therefore should never be employed without great caution." *Gibbs v. Banks*, 527 So. 2d 658, 659 (Miss. 1988). "[D]etermination of damages made by a jury are not to be set aside lightly." *Green*, 641 So. 2d at 1209. "Viewing the conflicting evidence presented in the instant case, the verdict does not appear to be either against the overwhelming weight of the evidence or so inadequate as to evidence bias, passion, or prejudice on the part of the jury." *See id.* at 1209-10.

¶13. This Court has "consistently enunciated the principle that a jury verdict is to be accorded substantial deference." *Leach v. Leach*, 597 So. 2d 1295, 1299 (Miss. 1992). The $5,000.00 jury verdict in this case was supported by the evidence, and was not so shocking to the conscience as to demonstrate bias, passion, or prejudice. The reasons given for the additur were not based on the evidence presented at trial. Therefore, the judgment of additur is reversed and rendered. The jury verdict is reinstated.

¶14. **REVERSED AND RENDERED.**

**PITTMAN, P.J., BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND WALLER, J.**

 

**McRAE, JUSTICE, DISSENTING:**

¶15. I disagree with the majority's conclusion that the circuit judge abused his discretion in granting Sanders' motion for additur. The majority has not adequately refuted the lower court's findings or otherwise demonstrated an abuse of judicial discretion. The order of the circuit court should be affirmed; at the very least, the case should be remanded for a new trial on the issue of damages. Accordingly, I dissent.

¶16. The majority first suggests that the circuit court abused its discretion in basing its finding in part on the fact that the jury's decision was made within twenty minutes instead of another hour or so. As the majority notes, "there is no formula to determine how long a jury should deliberate." *Smith v. State*, 569 So. 2d 1203, 1205 (Miss. 1990). However, in *Johnson v. State*, 252 So. 2d 221, 224 (Miss. 1971), recognizing that premise, we stated that "[n]o two cases are similar as to facts and therefore the law varies in its application thereto." Moreover, we have discouraged judges from acting in any way such as to hasten a jury's deliberations, emphasizing the need for mature consideration of the issues before it. *Wade v. State*, 155 Miss. 648, 658, 124 So. 802, 804-05 (1929). While the length of a jury's deliberations might not necessarily indicate bias, passion or prejudice, or a lack thereof, *Smith*, 569 So. 2d at 1205, it is not unreasonable or even an abuse of discretion for a judge, given the peculiar facts of the case before him, to express some concern that the verdict was reached in such a short period of time.

¶17. The majority further appears discomforted by its inability to express the additional damages awarded by the additur in terms of a mathematical equation. Granted, Sanders' injuries did not preclude him from working. Nevertheless, because of the continuing pain he suffered, he was unable to do all that he had done prior to the accident and was forced to contract out some tasks, costing him some $300 to $500 per month. According to his supplemental responses to interrogatories, Sanders had already incurred medical expenses of $2,655.32 and paid sub-contractors $2,513.45 for work he was now physically unable to do. That these actual damages alone exceed the amount awarded by the jury provided the basis for an additur, whereas in the case *sub judice*, there is also evidence of pain and suffering. *Moody v. RPM Pizza, Inc.*, 659 So. 2d 877, 883 (Miss. 1995); *Rodgers v. Pascagoula Pub. Sch. Dist.*, 611 So. 2d 942, 945-46 (Miss. 1992). Moreover, we have not abandoned the old maxim that the defendant must take the plaintiff as he finds him. *Insurance Dept. of Mississippi v. Dinsmore*, 233 Miss. 569, 579, 102 So. 2d 691, 694 (1958). Thus, the fact that future surgery is necessary because the accident exacerbated an old injury, rather than creating a new one, should have no bearing on the dollar value of the damages recoverable.

¶18. Finally, the majority makes much of the fact that at the time of the accident, Sanders didn't think he was hurt and that he didn't go the doctor until eleven days after the accident. Not all injuries are immediately apparent. We cannot make light of an injury because it did not manifest itself at the scene of the accident or require emergency medical attention.

¶19. Finding no basis for the majority's contention that the circuit court abused its discretion in granting an additur, I would affirm the order; or, in the alternative, reverse for a new trial on the issue of damages. Accordingly, I dissent.

**SULLIVAN, P.J., AND WALLER, J., JOIN THIS OPINION.**

1. There was also some testimony regarding a possible injury to Sanders' acromioclavicular (AC) joint. Specifically, one doctor concluded that Sanders suffered a mild AC dislocation, which healed within six weeks of the accident. Another doctor testified that Sanders had not sustained serious shoulder injury, and that dislocation of either the AC joint or the sternoclavicular (SC) joint required much greater force than that received in the accident. However, the testimony regarding the need for future surgery focused on Sanders' SC joint. Even if the testimony regarding the future surgery could be construed to include the AC joint, the analysis is still the same, regarding the need for future surgery.