PRATHER, Chief Justice,
for the Court:
¶ 1. This case arises from a car accident, which occurred August 21, 1992. The defendant admitted liability, and the only issue before the jury was the amount of damages. The jury awarded the plaintiff $5,000.00, and the trial judge later granted an additur of $22,500.00. The only issue on appeal is the propriety of the additur.
¶ 2. State statute permits additurs, “if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence.” Miss.Code Ann. § 11-1-55 (Supp. 1991).
¶ 3. “The scope of review that this Court employs in considering an additur appeal is limited to ‘determining whether the trial court abused its discretion.’ ” Green v. Grant, 641 So.2d 1203, 1208 (Miss.1994) (quoting Rodgers v. Pascagoula Pub. Sch. Dist., 611 So.2d 942, 945 (Miss.1992)).
¶ 4. In addition, “the party seeking the additur has the burden of proving his injuries, damages and loss of income. In determining whether this burden is met, this Court must view the evidence in the light most favorable to the defendant, giving that party all favorable inferences that reasonably may be drawn therefrom.” Id. (quoting Rodgers, 611 So.2d at 945).
Further, “[ajwards fixed by jury determination are not merely advisory and will not under the general rule be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.” Rodgers, 611 So.2d at 945. See also, City of Jackson v. Ainsworth, 462 So.2d 325, 328 (Miss.1984); Toyota Motor Co., v. Sanford, 375 So.2d 1036, 1037-38 (Miss.1979).
Green, 641 So.2d at 1208-09.
[T]his Court has the responsibility to see that [the] judicial discretion in trial judges is exercised soundly, or we will reverse.
* * *
[T]his Court “will not hesitate to set aside the order [of additur] improvidently granted and to reinstate the verdict of the jury.” See Biloxi Electric Co. v. Thom, 264 So.2d 404 (Miss.1972).
Mississippi State Highway Comm’n v. Antioch Baptist Church, Inc., 392 So.2d 512, 514-15 (Miss.1981).
¶ 5. The record indicates that the plaintiff, Sanders, had no visible injuries at the time of the accident, and stated that he was not hurt. He did not see a doctor until eleven days after the accident. His total medical bills were $1,579.50. There is evidence that, shortly after the accident, Sanders personally made some repairs to his car. However, there is no evidence regarding the cost of those repairs.
¶ 6. In addition, Sanders, who owned and managed properties, testified that, after the accident, he could not do some of the manual labor his job required. As a result, Sanders contended that he had to pay contractors $300.00-$500.00 per month to do this work. To the contrary, however, Sanders stated in his deposition that he continued to work after the accident. He also told one of his treating physicians that he was functioning fairly normally and performing such tasks as shoveling dirt. Sanders’ physical activity was never restricted by a doctor.
¶ 7. The main question before the jury was whether the accident necessitated future surgery to re-sect Sanders’ sterno-clavicular joint.[1] The medical evidence *189 indicated that Sanders had the joint surgically wired in 1958, and that subsequent complications developed in 1984, when it was discovered that the original surgical wires had loosened. Sanders also had longstanding arthritic degeneration in .the joint, which pre-dated the accident. The evidence further indicated that Sanders may have required the surgery, regardless of the accident. The only evidence that the accident had aggravated the old injury was' based on Sanders’ own statements.
¶ 8. Given these facts, the $5,000.00 verdict was not against the overwhelming weight of the evidence, or so shocking to the conscience as to demonstrate bias, prejudice, or passion. Indeed, the jury could have believed that Sanders would require the expensive surgery, but that only a small portion of the cost of surgery was due to the accident, because the need for the surgery was primarily pre-existing. “ ‘When testimony is contradicted, this Court will defer to the jury, which- determines the weight and worth of testimony and the credibility of the witness at trial.’ ” Green, 641 So.2d at 1209 (quoting Odom v. Roberts, 606 So.2d 114, 118 (Miss.1992)).
¶ 9. Furthermore, the additur appears to have been granted based on the trial judge’s pretrial evaluation of the case, as well as his admitted “disgust” with the jury for only deliberating twenty minutes. Neither of these reasons are based on the evidence presented at trial. Therefore, the trial judge abused his discretion in granting the additur.
¶ 10. Prior to the trial, the circuit judge valued the case at $25,000.00-$85,000.00. The trial judge strongly recommended that the parties settle the case in that range. He told counsel that, if the verdict were less than that amount, he would grant an -additur, and, if the verdict were more than that amount, he would grant a remittitur. In granting the additur, the trial judge stated, “[the defendant] didn’t believe me obviously.”
¶ 11. Furthermore, with regard to the length of jury deliberations, the trial judge said: “I tell you the truth, if they had stayed out another hour and returned the same verdict I would not consider the ad-ditur”. “This Court has held that there is no formula to determine how long a jury should deliberate.” Smith v. State, 569 So.2d 1203, 1205 (Miss.1990). Moreover, when questioned by the trial court, the jury foreman in the case sub judice stated, “We took our turn to speak around the table and suggested a settlement amount and decision and by a show of hands we reached' the amount of the verdict.” Under these circumstances, an additur based on the length of deliberations is an abuse of discretion.
¶ 12. “Additurs represent a judicial incursion into the traditional habitat of the jury, and therefore should never be employed without great caution.” Gibbs v. Banks, 527 So.2d 658, 659 (Miss.1988). “[Determination of damages made by a jury are not to be set aside lightly.” Green, 641 So.2d at 1209. “Viewing the conflicting evidence presented in the instant case, the verdict does not appear to be either against the overwhelming weight of the evidence or so inadequate as to evidence bias, passion, or prejudice on the part of the jury.” See id. at 1209-10.
¶ 13. This Court has “consistently enunciated the principle that a jury verdict is to be accorded substantial deference.” Leach v. Leach, 597 So.2d 1295, 1299 (Miss.1992). The $5,000.00 jury verdict in this case was supported by the evidence,, and was not so *190 shocking to the conscience as to demonstrate bias, passion, or prejudice. The reasons given for the additur were not based on the evidence presented at trial. Therefore, the judgment of additur is reversed and rendered. The jury verdict is reinstated.
¶ 14. REVERSED AND RENDERED.
PITTMAN, P.J., and BANKS, JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., concur.
McRAE, J., dissents with separate written opinion joined by SULLIVAN, P.J., and WALLER, J.

. There was also some testimony regarding a possible injury to Sanders’ acromioclavicular *189 (AC) joint. Specifically, one doctor concluded that Sanders suffered a mild AC dislocation, which healed within six weeks of the accident. Another doctor testified that Sanders had not sustained serious shoulder injury, and that dislocation of either the AC joint or the sternoclavicular (SC) joint required much greater force than that received in the accident. However, the testimony regarding the need for future surgery focused on Sanders' SC joint. Even if the testimony regarding the future surgery could be construed to include the AC joint, the analysis is still the same, regarding the need for future surgery.