963 So.2d 1204 (2007)
Robert W. QUINN and Cherie Quinn, Appellants
v.
President Broadwater Hotel, LLC, Appellee.
No. 2006-CA-00090-COA.
Court of Appeals of Mississippi.
May 1, 2007.
Rehearing Denied September 4, 2007.
*1205 William Michael Kulick, Ocean Springs, Robert W. Gambrell, Biloxi, attorneys for appellants.
David C. Goff, Gulfport, attorney for appellee.
Before LEE, P.J., ISHEE and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. This case comes before the Court from the Circuit Court of Harrison County, Second Judicial District. At the conclusion of a trial on the issue of damages only, the jury awarded $5,000 to Robert Quinn for personal injuries sustained while on the premises of the President Casino Broadwater Resort (President). Thereafter, Mr. Quinn and his wife, Cherie Quinn, filed a motion for an additur or a new trial, which was denied. Aggrieved by the trial court's decision, the Quinns appeal. They argue that the trial court erred in overruling their motion and urge this Court to grant an additur or, in the alternative, a new trial. Finding no error, we affirm.

FACTS
¶ 2. On October 30, 1998, Mr. Quinn was injured on the premises of the President Casino Broadwater Resort (President) when he stepped into an unobvious hole in the ground. As a result of this incident, Mr. Quinn cut his left leg and tore the anterior cruciate ligament (ACL) in his right knee, which was surgically repaired in December 1998. As a result of his injuries, Mr. Quinn incurred medical bills totaling $27,242, all of which were paid by President.
¶ 3. The Quinns filed a complaint on September 20, 1999. President admitted liability in the case and the matter proceeded to trial as to damages only on September 28, 2004. After a two-day trial, the jury returned a verdict for Mr. Quinn and assessed damages in the amount of $5,000 as compensation for his pain and suffering, and permanent physical limitations including loss of enjoyment of life. The jury found that Mr. Quinn was entitled to no damages for past and future lost earnings and that Mrs. Quinn was entitled to no damages for loss of consortium.

DISCUSSION
¶ 4. On appeal, the Quinns argue that the jury award of $5,000 was so inadequate as to be against the overwhelming weight of the credible evidence and to indicate that the jury was influenced by prejudice or bias against them. President argues that the jury assessed the weight of the evidence and the credibility of the witnesses and arrived at a reasonable verdict which should not be disturbed on appeal.
¶ 5. The trial judge has the authority to grant an additur pursuant to Mississippi Code Annotated section 11-1-55 which states:
The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion *1206 for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.
Miss.Code Ann. § 11-1-55 (Rev.2002).
¶ 6. We review a trial court's denial of an additur under an abuse of discretion standard of review. Patterson v. Liberty Assocs., L.P., 910 So.2d 1014, 1020(19) (Miss.2004) (citations omitted). The burden of proof lies with the party seeking the additur, who must prove his injuries, loss of income and other damages. Id. (citations omitted). "In determining whether this burden is met, this Court must view the evidence in the light most favorable to the defendant, giving that party all favorable inferences that reasonably may be drawn therefrom." Rodgers v. Pascagoula Public School Dist., 611 So.2d 942, 945 (Miss.1992) (citations omitted). "It is primarily the province of the jury to determine the amount of damages to be awarded and the award will normally not `be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.'" Harvey v. Wall, 649 So.2d 184, 187 (Miss.1995) (citing Rodgers, 611 So.2d at 945). "Additurs represent a judicial incursion into the traditional habitat of the jury, and therefore should never be employed without great caution." Gibbs v. Banks, 527 So.2d 658, 659 (Miss.1988).
¶ 7. The Quinns direct us to prior cases where our reviewing courts have granted an additur in instances where the jury's monetary award left little or nothing for elements of damage which were uncontested or undisputed by the evidence. See, e.g., Maddox v. Muirhead, 738 So.2d 742, 744-45 (¶¶ 6-11) (Miss.1999) (jury award of $2,900, after reduction for plaintiff's fault, failed to compensate plaintiff for uncontested medical bills and left nothing for pain and suffering); Harvey v. Wall, 649 So.2d 184 (Miss.1995) (additur granted where jury award left under one hundred dollars for uncontradicted elements of pain and suffering and permanent impairment); Rodgers v. Pascagoula Public School Dist., 611 So.2d 942 (Miss.1992) (additur granted where jury returned verdict equal to medical expenses despite uncontradicted proof of pain and suffering and permanent impairment); Pham v. Welter, 542 So.2d 884 (Miss.1989) (additur granted where jury award of $30,000 compensated plaintiff for undisputed medical bills and lost wages in the amount of $28,682, but left only the remainder for pain and suffering and permanent impairment which was supported by ample proof); but see, Depriest v. Barber, 798 So.2d 456, 459(¶ 11) (Miss. 1999) (jury award of $3,269.05 for pain and suffering was sufficient and did not require additur).
¶ 8. On the other hand, we note that our supreme court has refused to grant an additur where there is conflicting evidence before the jury concerning the claimed damages. Green v. Grant, 641 So.2d 1203, *1207 1209 (Miss.1994). In Green, the plaintiff claimed that the jury award of $2,000 was against the weight of the evidence and indicated bias on the part of the jury. Id. at 1207. In affirming the trial court's denial of additur, the supreme court reasoned that "the issue of the extent of Green's injuries, the reasonableness and necessity of her medical expenses, and the reasonableness and necessity of her lost income were seriously contested." Id. at 1209. The court held that "[the] conflicting testimony and evidence appear[ed] to have created an issue on the amount of damages for the jury to decide." Id.
¶ 9. Turning to the instant case, the jury considered the following elements of damage to determine the amount, if any, to award the Quinns: (1) past and future pain and suffering; (2) physical impairment; (3) loss of enjoyment of life (4) past and future lost earnings; and (5) loss of consortium for Mrs. Quinn.
Pain and Suffering
¶ 10. Mr. Quinn put on proof regarding pain and suffering associated with his injuries. A review of the evidence reveals that, as a result of the incident at President, he sustained a cut to his left leg and a torn ACL in his right knee. Mr. Quinn's knee was surgically repaired by Dr. Harold Hawkins on or about the first of December 1998. Mr. Quinn testified that he underwent physical therapy for several months which was painful and that it was six months until he was over the pain. He further testified that he could not put any pressure on his right foot for about four months and that he has never walked the same way that he did prior to the accident. However, on cross-examination, President presented Dr. Hawkins' office record dated February 10, 1999, just over two months after Mr. Quinn's surgery. Dr. Hawkins' notes, contained in the office record, stated that "[Mr. Quinn] tends to walk stiff-legged but says he can walk normal when he thinks about it." The office record further indicated that "other than the physical therapy he needs, he is really at maximum medical improvement here in just over two months."
Loss of Enjoyment of Life and Loss of Consortium
¶ 11. Mr. Quinn testified as to his loss of enjoyment of life. He stated that for the first year after the accident he "was really bummed out." He claimed that the accident put strain on his marriage and that intimate relations between him and his wife had suffered as a consequence. He testified that he could no longer perform household activities such as yard work and the like and further that he could no longer engage in recreational activities that he enjoyed prior to the accident. To this end, he claimed that he was physically unable to take his sail boat out and he could no longer play sports with his kids.
¶ 12. Regarding Mrs. Quinn's loss of consortium, she testified that Mr. Quinn no longer helps with yard work, but he is able to perform household duties such as vacuuming, doing dishes, and making the beds. Mrs. Quinn stated that Mr. Quinn was depressed and difficult to live with, and that they used to go out all the time before the accident, but have ceased to do so since.
Physical impairment
¶ 13. It was established at trial that Mr. Quinn's knee injury left him with an impaired physical ability as to his right leg. Dr. Hawkins assigned an impairment rating of twenty-four percent to Mr. Quinn's leg. While the existence of a physical *1208 impairment was established, the larger issue is to what extent this impairment affected Mr. Quinn's capacity to earn.
Past and Future Lost earnings
¶ 14. Mr. Quinn testified that prior to his injury on October 30, 1998, he was self-employed in the heating and air conditioning business. He testified that he was illiterate and learned the heating and air conditioning business in a government vocational training program offered in Virginia where he started his own business in 1992. He stated that his wife handled all of the paperwork and he performed all of the physical work. He stated that he and his wife relocated to Mississippi in 1994 where they continued the business until the accident. Mr. Quinn testified that his gross income was around $64,000 in 1994, around $100,000 in both 1996 and 1997, and between $40,000 and $45,000 in 1998.
¶ 15. Mr. Quinn's tax returns for the years 1992 through 1998 were admitted into evidence. They showed that Mr. Quinn reported earnings each year as follows: 1992-$20,273, 1993-$22,606, 1994-$13,556, 1995-$12,919, 1996-$41,235, 1997-$41,342, 1998-$20,146. The evidence showed that no income was reported from July 1998 through October 1998, the month of the accident. On September 15, 1998, six weeks before the accident, Mr. Quinn went to Memorial Hospital in Gulfport complaining of kidney pain. The hospital record of his visit reflects that he told hospital personnel that he was unemployed. On October 31, 1998, the day after the accident, Mr. Quinn again told hospital personnel that he was unemployed.
¶ 16. Mr. Quinn offered testimony that he had purchased a sailboat about forty-five days before the accident. He stated that he and his family were planning to go on an extended sailing trip and, at the time of the accident, he had been cutting business back and preparing his boat for the trip.
¶ 17. Sandra Saltarelli, an independent third party witness, testified that she was at a friend's house in June 1997, and that the Quinns came to the house to do some air conditioning work. She testified that she observed Mrs. Quinn helping Mr. Quinn perform the job. Ms. Saltarelli testified that Mr. Quinn told her that his business was not doing well, that he could not afford to hire anyone else, and that he had bad knees and was not able to work anymore. She testified that she saw Mr. Quinn again at a medical office about two years later, where Mr. Quinn made the comment to her that he was about to have a huge change in lifestyle and expected to get a great deal of money from President.
¶ 18. Two functional capacity evaluations (FCE) were introduced into evidence. The first dated November 29, 2000, indicated that Mr. Quinn could perform medium level work for an eight hour day.[1] A comment to the FCE indicated that Mr. Quinn's participation was self-limiting stating that "maximum signs of effort were not present when he related he could not lift/pull/carry more weight." A second FCE was conducted on September 7, 2003. This evaluation indicated that Mr. Quinn could perform sedentary work.[2]
¶ 19. The jury heard expert testimony of two vocational rehabilitation specialists. *1209 Tommy Sanders testified on behalf of the Quinns. He stated that, based on the two FCE's, Mr. Quinn was employable and that there were jobs available to him in the market with starting pay ranging from $5.15 to $7.00 an hour. Leon Tingle was called to testify by President. He stated that Mr. Quinn was employable and that jobs were available to him with starting pay ranging from $5.15 to $8.50 an hour. Mr. Tingle also testified that there were numerous free adult education and vocational training programs available to Mr. Quinn.
¶ 20. The jury also heard expert testimony from economists regarding possible past and future lost earnings. The expert for the Quinns estimated lost earnings to be between $422,101 and $446,245 depending on the wage at which Mr. Quinn would earn, assuming he returned to the workplace. President offered expert testimony to rebut that of the Quinn's expert in the event that the jury accepted Mr. Quinn's evidence regarding his physical limitations, and believed that Mr. Quinn had proven some economic loss. The expert for President projected Mr. Quinn's lost earnings to be between $92,972 and $149,169, assuming Mr. Quinn returned to the workplace. This expert also noted that Mr. Quinn's tax returns for the years 1992 to 1998 were all filed in the year 2000, a fact admitted by Quinn.
¶ 21. Mr. Quinn testified that he has not returned to work since the date of the injury. He testified that he is physically unable to return to his prior line of work and that his physical limitations in conjunction with the fact that he is functionally illiterate virtually preclude him from any type of gainful employment.
¶ 22. The jury was allowed to view a surveillance video of Mr. Quinn. The video was recorded on three separate occasions between the time of the injury and the time of trial. The video showed Mr. Quinn walking around town with Mrs. Quinn, driving a car, and showed him sitting and standing as well as kneeling and lying down. Aside from a slight limp, the video demonstrated Mr. Quinn carrying on in his daily life with no apparent problems.
¶ 23. It is well-established in our jurisprudence that the jury is the trier of fact and "[d]etermines the weight of the testimony and the credibility of the witnesses at trial and it is the primary province of the jury to determine the amount of damages to award." Teasley v. Buford, 876 So.2d 1070, 1075(¶ 8) (Miss.2004). In the context of additur and remittitur it is often held that the jury's determination should remain undisturbed on appeal when there was contradicting evidence presented which supports the jury's determination. See Patterson v. Liberty Assocs., L.P., 910 So.2d 1014, 1022(¶ 24) (Miss. 2005) ("The jury and the judge observed the witnesses and their demeanor-we did not. We refuse to become a thirteenth juror and substitute our judgment for that of the jury when reasonable jurors could differ on the verdict from the evidence presented."); Odom v. Roberts, 606 So.2d 114, 118 (Miss.1992) ("When testimony is contradicted, this Court will defer to the jury, which determines the weight and worth of testimony and the credibility of the witness at trial." (citations omitted)). The court in Odom continued that "[where] the testimony at trial is uncontradicted, and additionally is `inherently probable, reasonable, credible and trustworthy,' this Court will find that the jury must have accepted the evidence as true." Odom, 606 So.2d at 118 (citing James v. Mabus, 574 So.2d 596, 600 (Miss.1990)).
¶ 24. In the instant case, we find that the existence and/or the extent of most of Mr. Quinn's various claimed elements of damage were contradicted by the *1210 evidence and disputed by the parties. It was uncontradicted and clearly established that Mr. Quinn suffered a physical impairment and that there was some pain and suffering associated with his injuries. However, beyond this, we find that President introduced contradictory evidence which created an issue for the jury as to the amount of damages to award the Quinns. Additionally, we find that Mr. Quinn's testimony was contradictory and many of his statements were impeached. Thus, the jury chose to disregard much of his testimony. We find that the jury award of $5,000, though admittedly small, is not so low as to shock the conscience.
¶ 25. In conclusion, after viewing the evidence in the light most favorable to President together with all inferences that may reasonably be drawn in President's favor, we find that the jury award finds support in the record, does not indicate bias or prejudice on the part of the jury, and is not against the overwhelming weight of the evidence. The jury was free to, and apparently chose to, resolve any disputes in the evidence in favor of President. Accordingly, we find no abuse of discretion on the part of the trial judge by overruling the Quinn's motion for additur or a new trial; likewise, we decline to award additur or a new trial on our own accord.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Medium work is described as exerting up to fifty pounds of force occasionally and/or ten to twenty-five pounds of force frequently.
[2] Sedentary work is described as exerting up to ten pounds of force occasionally and/ or a negligible amount of force frequently.