# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-00995-SCT


*BILLIE K. WHITE AND DAPHNE E. WHITE, A
MINOR, BY AND THROUGH HER NATURAL
MOTHER AND NEXT FRIEND, JUDY WHITE*

*v.*

*YELLOW FREIGHT SYSTEM, INC. AND JAMES D.
PARISH*

### CONSOLIDATED WITH
### NO. 2001-CA-00166-SCT


*IN RE: PATRICIA ALEXANDER KILLGORE AND
ROLAND C. LEWIS, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 4/24/2000 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | THOMAS W. BROCK |
| | WILLIAM S. GUY |
| | PATRICIA ALEXANDER KILLGORE |
| | PETER K. SMITH |
| ATTORNEYS FOR APPELLEES: | BARRY STUART ZIRULNIK |
| | MARTIN ROSE |
| | LEANE CAPPS MEDFORD |
| | MICHAEL CHADWICK SMITH |
| | JOHN BENTON CLARK |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 12/16/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The heirs of Billy R. White (the Whites) appeal from a Pike County Circuit Court judgment in favor of Yellow Freight System, Inc. and two of its drivers.  The Whites sued Yellow Freight, James D. Parish and William T. Hudson[1], Jr.,(collectively Yellow Freight) in a wrongful death action, alleging that a Yellow Freight truck negligently operated by its driver struck and killed Billy R. White.  The circuit court first tried the case in August, 1998, and the jury returned a general verdict for the Whites in the sum of $500,000.  Yellow Freight subsequently filed a motion for judgment notwithstanding the verdict, or in the alternative, a  new trial.  The trial court granted a new trial, finding that the verdict was against the overwhelming weight of the evidence.  The second trial took place in April, 2000, and the jury found for Yellow Freight.  The Whites appeal from that decision, alleging that the trial court erred (1) by setting aside the August 1998 jury verdict and granting Yellow Freight's motion for a new trial; (2) by having improper ex parte communications with the jury; and (3) by not recusing himself after having ex parte communications with the jury.  After careful review of the record, we conclude that the trial court did not abuse its discretion, and there is no reversible error.

### FACTS

¶2.     On the evening of July 3, 1989, Yellow Freight drivers Parish and Hudson were driving Yellow Freight trucks from Texas to Jackson, Mississippi on Interstate 55.  Parish drove the lead truck, pulling a double trailer.  As they approached the Welcome Center in Pike County,

---

[1] A motion for summary judgment in favor of driver Hudson was granted  prior to trial.

2

Mississippi, Parish ran over what he said was a white object lying close to the road centerline. The two Yellow Freight drivers stopped and Hudson went back to inspect the object, but it was so badly damaged he could not determine what it was. The drivers then decided to travel to the Fernwood Truck Stop, and they called the authorities from there.

¶3.     On the same evening, Tony Laird and his wife were traveling north on Interstate 55 in Pike County. Laird's wife noticed what she thought to be a body on the side of the road. After turning around to pass the body a second time, the Lairds went to the Welcome Center and called the authorities.

¶4.     Officer Albert Johnson of the Mississippi Department of Public Safety responded and began an investigation, taking measurements and preparing an accident report. After examining the scene, Officer Johnson went to the Fernwood Truck Stop to interview Parish and Hudson and examine their vehicles. Parish told Officer Johnson that he had hit an object or some type of animal. The object in question was later determined to be the body of Billy R. White.

## ANALYSIS

¶5.     On appeal, the Whites argue that the jury's verdict should have been allowed to stand, and that the trial judge should have granted neither a new trial nor a judgment notwithstanding the verdict. Yellow Freight asserts that the JNOV should have been granted in the first trial, because the trial court found, in essence, that the evidence was legally insufficient to support the verdict, although its opinion spoke in terms of the weight of the evidence. Even though the jury found for Yellow Freight in the second trial, and the ultimate outcome is the same, in our view there is a need to briefly address the trial court decision.

3

### 1. Motion for New Trial or alternatively for Judgment Notwithstanding the Verdict

¶6.     A motion for a JNOV tests the legal sufficiency of the evidence supporting the verdict, not the weight of the evidence. *Tharp v. Bunge Corp.*, 641 So.2d 20, 23 (Miss. 1994). It asks the court to hold, as a matter of law, that the verdict may not stand. *Goodwin v. Derryberry Co.*, 553 So.2d 40, 42 (Miss. 1989) (citing *Stubblefield v. Jesco, Inc.*, 464 So.2d 47, 54 (Miss. 1984)). When a motion for JNOV is made, the trial court must consider all of the evidence–not just evidence which supports the non-movant's case–in the light most favorable to the party opposed to the motion. If the facts and inferences so considered point so overwhelmingly in favor of the movant that reasonable jurors could not have arrived at a contrary verdict, granting the motion is required. *Janssen Pharmaceutica, Inc. v. Bailey*, 878 So.2d 31, 54 (Miss. 2004). Whether the trial judge grants or denies a motion for JNOV in no way affects and little informs the trial judge regarding the disposition of a motion for new trial. *Jesco, Inc. v. Whitehead*, 451 So.2d 706, 714 (Miss. 1984) (Robertson, J., concurring).

¶7.     A motion for a new trial falls within a lower standard of review than does that of a judgment notwithstanding the verdict or a directed verdict. *Bailey*, 878 So.2d at 55. Rule 59 of the Mississippi Rules of Civil Procedure authorizes the trial judge to set aside a jury verdict as to any or all parts of the issues tried and to grant a new trial whenever, whenever justice requires. Miss. R. Civ. P. 59 cmt. The grant or denial of a motion for a new trial is a matter within the trial court's sound discretion. *Green v. Grant*, 641 So.2d 1203, 1207 (Miss. 1994). A new trial may be granted in a number of circumstances, such as when the

4

verdict is against the substantial or overwhelming weight of the evidence. ***Shields v. Easterling***, 676 So.2d 293, 298 (Miss. 1996); *see also* U.R.C.C.C.P. 10:05(2)[2]. On appeal, this Court may reverse the granting of a new trial only when the trial court has abused its discretion. ***Green***, 641 So.2d at 1207. The existence of trial court discretion, as a matter of law and logic, necessarily implies that there are at least two differing actions, neither of which if taken by the trial judge will result in reversal. ***Shields***, 676 So.2d at 298. In reviewing the trial court's decision, an appellate court must consider the credible evidence in the light most favorable to the non-moving party and generally take the credible evidence supporting the claims or defenses of the non-moving party as true. ***Green***, 641 So.2d at 1207. When the evidence is so viewed, this Court will reverse only when, upon review of the entire record, we are left with a firm and definite conviction that the verdict, if allowed to stand, would work a miscarriage of justice. ***Id.*** at 1207-08.

¶8. In both trials, it was undisputed that White died of injuries he received when he was struck by a motor vehicle on Interstate 55 in Pike County, Mississippi, and that White was standing erect and facing whatever vehicle struck him at the time of first impact. In addition, it was also undisputed that the Yellow Freight vehicle operated by Parish struck White's body at some point in time, and that there was minimal damage to the truck, especially to the

---

[2] The present case points out that application of Uniform Rules of Circuit and County Court 10.05 (2), as it stands today, may lead to inconsistent, and potentially unjust, results. Among the list of six grounds for granting a new trial, subsection (2) provides that a new trial may be granted "[i]f the verdict is contrary to law or the weight of the evidence." When a jury verdict for a plaintiff must be taken away, not because of error, but because the plaintiff has failed to introduce sufficient evidence to present a triable issue of fact for the jury, there appears to be no justification for allowing that plaintiff to proceed to a second trial against the same defendant for the same claim. Although future amendment of this rule is warranted, the present case is decided on existing rules and law.

fiberglass front grill, fenders, and body of the truck. The Whites allege that the Yellow Freight truck driven by Parish struck Billy White while he was alive and caused his death. Yellow Freight asserts that White was already dead from contact with another vehicle and lying in the road when its truck struck White's body. Therefore, the key issue in this case was whether a Yellow Freight truck driven by James Parish hit **and** killed Billy White.

¶9. In order to prevail in a wrongful death action, the plaintiff must establish that the conduct of the defendant proximately caused the injury and death in question. *Berryhill v. Nichols*, 171 Miss. 769, 773, 158 So. 470, 471 (1935). There was no eyewitness testimony, at either trial, that the Yellow Freight truck driven by Parish struck White while he was standing in the road. Therefore, the jury in the first trial was required to base its verdict on circumstantial evidence and reasonable inferences.

¶10. In order to prove that the Yellow Freight truck driven by Parish struck Billy White while he was alive and standing, the Whites offered the testimony of Jerry Addison. Addison testified that he worked at the Fernwood Truck Stop the night of July 3, 1989, from 10:00 p.m. until 6:00 a.m. Addison testified that he was asked by two Yellow Freight drivers who had pulled into the truck stop to rinse blood off the front grills of their trucks from a deer they had hit. Addison said that in addition to rinsing off blood, he rinsed hair and chips of bone from the grill of the first truck and a little blood on the side and front of the second truck. The Whites claim that Addison's testimony, along with a picture of Parish's truck showing indentions in the front bumper, allowed the jury to make reasonable inferences that the Yellow Freight truck driven by Parish struck and killed Billy White. There was, however, contradictory testimony from others who worked with Addison at the truck stop.

¶11.     The trial judge weighed the testimony of Addison against contravening evidence offered by Yellow Freight and granted Yellow Freight's motion for a new trial.   In the order, he acknowledged that while the evidence presented by the Whites regarding the issues of negligence and damages was "voluminous," their only evidence supporting the element of causation was Addison's testimony.  In granting the new trial, the court said:

> In order to find for the plaintiff, the jury must have conclusively found that Mr. White was standing erect, in the roadway facing the oncoming eighteen wheeler in the traveled lane of traffic . . . . The undersigned trial judge is convinced that the verdict reached by the jury is contrary to the overwhelming weight of the evidence.  Based upon the proof before the Court it is improbable that there would not have been more damage to the vehicle of the defendants.  It denies the ordinary operation of physical forces and the jury either failed to weigh the credible evidence carefully, drew unwarranted inferences or yielded to bias and prejudice in reaching its verdict.

The trial judge discounted Addison's testimony as substantially impeached by the physical facts, the testimony of other witnesses, a previous statement by Addison, and issues with the timing of the disclosure of Addison's testimony.

¶12.     The question before this Court is whether the trial judge abused his discretion by discounting Addison's testimony for lack of credibility and granting the defendants' motion for new trial.  It was undisputed by the parties at trial that White was standing erect and facing whatever vehicle initially struck him.   The parties also did not dispute that the Yellow Freight truck driven by Parish was traveling between 55 to 65 miles per hour.  Furthermore, it was undisputed that the front part of Parish's truck was covered by a plastic facade and fiberglass. The accident reconstruction experts for both the Whites and Yellow Freight testified that they would expect there to be visible damage to the front part of Parish's vehicle if it struck the

body of White, especially the fiberglass grill and the plastic coverings. However, there was no significant damage to the front of Parish's truck except for a small dent in the front bumper.

¶13. This Court has held before that "verdicts are to be founded upon probabilities according to common knowledge, common experience, and common sense, and not upon possibilities; and a verdict cannot convert a possibility or any number of possibilities into a probability." *Elsworth v. Glindmeyer*, 234 So.2d 312, 319 (Miss. 1970). Furthermore, findings of fact "will be set aside when . . . clearly or manifestly against all reasonable probability." *Id.* In the present case, there was uncontroverted testimony that the force of the impact striking on the of the truck would have been the equivalent of a 220 pound object falling from 101 feet. The front section of Parish's truck was composed of fiberglass and a plastic facade. Furthermore, it was not designed to contribute to the overall strength of the truck.

¶14. The Whites and their accident reconstruction expert, Steve Irwin, theorize that the bumper of Parish's truck received more of the force of impact from White's body than the grill. According to Irwin, White's upper body was a softer object than his knees and thus created less force when it impacted the grill of Parish's truck. However, Irwin testified that he would expect to see significant damage to the front of Parish's truck and that his theory on why there was almost no damage was only a "possibility."

¶15. Based upon the record before this Court, we cannot rule that the trial judge abused his discretion in granting a new trial. Arguably, the lack of evidence of negligence would have supported granting the defendants' motion for JNOV. See Miss. R. Civ. P. 50 cmt. Instead, the trial judge chose to deny the motion for JNOV and granted a new trial. That decision is

within the sound discretion of the trial judge, and we will not reverse absent an abuse of that discretion, which we do not find here. In *Elsworth*, this Court said:

> It is enough if the event found was so improbable, according to the ordinary operation of physical forces, or was so overwhelmingly disproved by credible witnesses, as to compel the conviction that the jury either failed to weigh the credible evidence carefully, or drew unwarranted inferences or yielded to partisan bias.

234 So.2d at 319. The Whites' own accident reconstruction expert acknowledged the unlikelihood that such an impact as the one between Parish's truck and White could occur without visible damage to the truck's front fiberglass and plastic sections, and offered only a "possibility" to explain the lack of visible damage. While the Whites offered Addison's testimony as evidence that the Yellow Freight truck struck White while he was alive and standing, Addison's testimony is further contradicted by the testimony of Officer Johnson, the accident investigator for the Mississippi Highway Patrol. Johnson testified that there were no visible signs of damage to the front of the Parish's truck, but that he found blood and tissue at several places underneath both Yellow Freight trucks. Furthermore, Johnson testified that he saw no evidence that Parish's truck had been washed. Based upon the evidence presented, this Court concludes that the trial judge did not abuse his discretion in discounting the testimony of Addison and granting Yellow Freight's motion for new trial. The Whites' first assertion of error is without merit.

### 2. Ex parte Communications Between Trial Judge and Jury

¶16. The Whites next allege that the trial judge granted Yellow Freight's motion for new trial based on his improper ex parte communications with the jury after the trial. After the return of the verdict and discharge of the jury, the trial judge went into the jury room to thank the

9

jurors for their service, distribute their paychecks, and inquire as to the adequacy of the provision for the jurors' physical needs during their service. During this exchange, a juror asked the trial judge if it was permissible to speak with Parish now that the trial was over. The trial judge responded, "yes." The following exchange then took place according to the trial judge:

> She said "we don't think it was his fault," or words to that effect. And I said, because I was concerned, I saw that she was a juror that had voted for the verdict. I said, "what do you mean?" She said, "well, we think he was already down." I asked the questions, "how many of you think he was already down" All twelve jurors raised their hand. Now, that was the extent of it.

The trial judge then informed the parties in open court the substance of the exchange that took place and the context. As a result, the Whites objected that such ex parte communications were improper.

¶17. Miss. R. Evid. 606(b) generally prohibits the admission of evidence of juror deliberations and their thought processes during the deliberations. We have not found, however, Mississippi case law or rule specifically dealing with the issue of ex parte communications between a judge and jury members after the rendering of a verdict. The Whites ask the Court to follow *Peterson v. Wilson*, 141 F.3d 573, 578 (5th Cir. 1998), which held that impeachment of a jury verdict on the basis of information obtained from a judge's discussion with jury members after the return of a verdict was an abuse of discretion per se. However, the Whites' reliance on *Peterson* is misplaced.

¶18. In *Peterson*, the trial judge sua sponte granted the defendant's motion for a new trial based upon information obtained from a post-verdict, ex parte meeting with the jury and not

because of insufficiency of the evidence or because the verdict was against the great weight of the evidence. *Id.* at 575. The trial court's order in *Peterson* stated:

> The court concludes, based on the jury's verdict and ***comments the jurors made to the court after returning the verdict*** [and outside the presence of the parties and their respective counsel], that the jury completely disregarded the Court's instructions. Instead, it appears that the jury considered improper factors in reaching its verdict. Accordingly, the Court deems it in the interest of justice to grant a new trial.

*Id.* (emphasis & alteration in original). The Fifth Circuit concluded "beyond cavil" that the district court based its decision on information obtained from the jurors themselves and not on the evidence and arguments of the parties. *Id.* According to the Fifth Circuit, the jury had been presented with "extensive evidence . . . much of which was in direct conflict." *Id.* at 579. Most importantly, the Fifth Circuit noted that "palpably absent from the record of the first trial . . . is a 'great weight of evidence' either way." *Id.*

¶19. The actions of the trial court in the present case are quite different from the ones in *Peterson*. In the present case, the trial judge met with the jurors to thank them for their service, distribute their paychecks, and inquire as to the hospitality of the court personnel. The purpose of such a meeting was not to inquire about the verdict as in *Peterson*, but to facilitate the administrative workings of the court. This was a regular practice of the trial judge since he assumed the bench. In addition, the juror who voluntarily stated that she believed that White was already down when hit by Parish's truck expressed herself without any prompting from the trial judge, unlike in *Peterson* where the trial judge improperly initiated the inquiry. Furthermore, unlike in *Peterson*, this trial judge's post-trial order granting a new trial does not mention the post-discharge communication with the jury, but instead describes the lack of

11

evidence supporting the verdict. In the present case, Yellow Freight attacked the evidence of causation as insufficient throughout the case, in its motion for summary judgment and its motion for judgment not withstanding the verdict. Clearly this was an issue long before any post-trial communication between the judge and jury. Finally, the present trial judge, unlike in *Peterson*, stated on record "I will base my ruling [on the post-verdict motions] on the evidence and the evidence alone." Based upon these differences, the reasoning of *Peterson* is not controlling in this case.

¶20. In addition to *Peterson*, the Whites rely on Miss. Code Ann. § 11-7-155 (Rev. 2004), which says "[t]he judge in any civil cause shall not sum up or comment on the testimony, or charge the jury as to the weight of the evidence." However, this statute governs the actions of a trial judge during the course of a trial and the submission of issues to the jury, not post-trial events. Accordingly, that statute is not applicable here.

¶21. The evidence is clear that the trial judge did not base his decision to grant Yellow Freight's motion for new trial on his post-trial ex parte communications with the jury. However, such communications should be undertaken with extreme caution, and be very limited in nature. Should an innocuous question or answer by a judge unexpectedly lead to such a critical statement, then the better course of action would be to cease the ex parte conversation until counsel are present. Where, as here, even arguably harmless comments are made, they could lead to additional comments that later cause legitimate concern when a JNOV or new trial is granted. The Whites' second assertion of reversible error is without merit.

### 3. Recusal

12

¶22. The Whites' final allegation of error is that the trial judge erred in not recusing himself after having post-verdict ex parte communications with the jury. On September 3, 1998, as a result of those communications with the jury, the Whites timely filed a Motion to Recuse Trial Judge which the trial court denied two weeks later. After that denial, the Whites filed a Petition for Writ of Mandamus, Writ of Prohibition and/or other Extraordinary Relief and/or for Interlocutory Appeal with this Court, Civ. No. 1998 M 1372, which we denied on October 14, 1998. Diligently, the Whites then filed a Motion for Rehearing which this Court denied, followed by a Motion for Rehearing en banc, which also was denied.

¶23. The Whites assert that the trial judge's post-verdict ex parte communications with the jury would cause a reasonable person to harbor doubts about the trial judge's impartiality. The standard of review by which this Court determines whether the trial judge erred in refusing to disqualify himself is whether the trial judge committed a "manifest abuse of discretion." *Neal v. State*, 687 So.2d 1180, 1185 (Miss. 1996). A trial judge determines whether to recuse himself under an objective standard. *Id.* "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." *Rutland v. Pridgen*, 493 So.2d 952, 954 (Miss. 1986). The law, however, presumes that "a judge, sworn to administer impartial justice, is qualified and unbiased." *Turner v. State,* 573 So.2d 657, 678 (Miss. 1990). To overcome this presumption, the movant must show beyond a reasonable doubt that the judge was biased or not qualified. *Neal*, 687 So.2d at 1185. Conclusory allegations unsupported by sufficient facts cannot overcome the presumption or require recusal. *Nicholson ex rel. Gollott v. State*, 672 So.2d 744, 755 (Miss. 1996).

¶24. The Whites have not overcome the presumption that the trial judge was unbiased and could act impartially. Judges routinely hear inadmissible evidence and have to rule based only upon admissible evidence. The trial judge himself noted this when ruling on the motion to recuse:

> I rule on admissions, confessions–not similar to this, but in a criminal case, I oftentimes rule that confessions where the defendant has admitted guilt, are not admissible, knowing that the admission of the confession would largely be dispositive of the case if it went to the jury. I sustain Motions to Exclude, and on numerous occasions the Defendant who has admitted his guilt, or her guilt, goes free, and I know the results of the ruling . . . T he question is whether or not–at this particular point of the Motion–is whether or not I can exclude what was said and base my ruling on the JNOV, or other post-trial motions, on the evidence. Well, I do that every day. Every day I take the bench, I do that. It is something that is not new to me to be able to exclude things from my mind, because I will base my ruling on the evidence, and the evidence alone.

The fact that the trial judge reported the ex parte communications and did not reference them in his order granting the motion for new trial is further evidence that the trial judge maintained his impartiality and limited his decision to the admissible evidence. Since the Whites have not shown beyond a reasonable doubt that the trial judge was biased and should have recused himself, their third point of error is without merit.

## CONCLUSION

¶25. Based on the above analysis, we hold that the trial judge did not abuse his discretion in setting aside the August 1998 jury verdict and granting Yellow Freight's motion for a new trial; that the trial judge's ex parte communication with the jury was not reversible error; and that the trial judge did not err in failing to recuse after having ex parte communication with the jury. The trial court's judgment is affirmed.

¶26. **AFFIRMED.**

**SMITH, C.J., WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINIONS. DIAZ, J., NOT PARTICIPATING.**