RUSSELL, J.,
for the Court:
¶ 1. This is an appeal of an eminent domain case from the Special Court of Eminent Domain of Lowndes County, Mississippi. After a trial, the jury awarded the landowners $604,760 in just compensation. The Mississippi Transportation Commission (MTC) appeals the jury award, claiming the trial court erred by (1) allowing testimony to prove demand of the subject property; (2) allowing irrelevant and immaterial testimony; (3) refusing jury instruction P-14 regarding the jury’s assessment of the appraisers’ testimonies; (4) admitting into evidence a sale of property incomparable to the subject property; (5) allowing expert testimony not based on reliable principles and methods; (6) allowing the landowners’ appraiser to testify about the highest and best use of incomparable sales and compounding the error by granting jury instruction D-13 regarding the size of land; (7) granting jury instruction D-12 regarding the landowners’ desire to sell the subject property; and (8) denying MTC’s motion for a new.trial. Finding no error, we affirm the jury award of $604,760 to the landowners.
FACTS AND PROCEDURAL HISTORY
¶ 2. Bryant Howard, Doris Howard, and James Howard owned a 111.16 acre tract of land used as a cattle farm. The east boundary of the Howard property was United States Highway 45, which was initially a two-lane highway. The north boundary of the property consisted of *782 Kansas City Southern Railroad.' The northeast boundary consisted of property owned by Mississippi Valley Gas Company, and McIntyre Road formed the south and west .boundaries of the Howard property.
¶ 3. On September 8, 2005j MTC' filed a complaint to acquire 45.57 acres of the Howards’ land for the expansion of Highway 45 into a four-lane highway. The trial court appointed Joyce Collie as an independent appraiser on October 10, 2005. Collie entered an appraisal value of $136,000 for total compensation and damages for the taking. On November 1, 2005, MTC acquired immediate title and possession of the condemned property by order of the court. On October 8, 2008, an agreed order .to allow MTC to file an amended complaint increasing the amount of land to be acquired from 45.57 acres to 46.31 acres and establishing the date of taking as the date MTC filed the amended complaint was entered. MTC filed the amended complaint on October 16, , 2008. MTC deposited $141,000 with the clerk of court on . November 7, 2005, and an additional $48,300 on August 20, 2008,. totaling $189,300.
¶ 4. MTC filed a statement of value on November 4, 2008, listing the fair market value ■ of the condemned property as $162,150 with $27,150 in damages for fencing replacement, for a total compensation of $189,300. ■ On March 1, 2010, the How-ards entered a statement of value with a just compensation figure of $1,454,530.32, based on a, fair market. value of $1,335,063.12 and damages of $119,467.20. The damages included $16,850 for fencing replacement; $3,000 for temporary water replacement; $207.27 for a temporary easement; and $99,409.93 in damages to the remaining property.
¶ 5. An amended statement of value was filed by MTC on March 5, 2010, adding severance as an additional element of damages.[1] That samé day, the Howards filed an amended statement of value changing the fair market-value from $1,885,063.12 to $1,388,141.25, and changing the amount of damages from $119,467.50 to $121,389.07. The Howards’ statement listed the same figures for the itemized damages, with the exception of $101,881.80 in damages to the remaining property. In spite of those changes, the amount of just compensation listed on the Howards’amended statement still totaled $1,454,580.82.
¶6. A trial was held on April 18-15, 2010/ Steve Holcombe, appraisal expert for the Howards; classified the -highest and best use of the Howard property as light industrial and secondary commercial. MTC’s appraisal expert, Alex Smith, classified the highest and best use of the property as rural residential and agricultural.
¶ 7. After hearing testimony and reviewing the evidence, which included traveling to the site to personally view the Howard property, the jury awarded the Howards $604,760 in just compensation for the taking. On May 14, 2010, MTC filed a motion for a new trial and a motion for judgment notwithstanding the verdict,- both of which were denied by the trial court. MTC now appeals. ■'
DISCUSSION
I. Whether the trial court erred in admitting the testimony of Higgins and Rhett to prove demand for the Howard property.
¶8. Generally, the admission or exclusion of testimony is within the discretion of the trial court. Miss. Transp. Comm’n v. Fires, 693 So.2d 917, 920 (Miss. *783 1997), Where a court has applied an incorrect 'legal standard for admitting evidence, the error has become one of law, and the appropriate standard of review is de novo. Id. This Court will only reverse if there was an erroneous interpretation or application of. the law. Id.
¶9. MTO argues the trial court erred when it ruled, in the presence of the jury, that the testimony of Joe Higgins and Robert Rhett was allowed to prove demand for the Howard property.[2] MTC filed a motion in limine to exclude the testimony of Higgins and Rhett on the ground of relevancy. The trial court reserved ruling on the motion and allowed testimony from the two witnesses to prove demand for the Howard property. Higgins, Chief Economic Developer for Lowndes County, testified that the Howard property was marketable as industrial and commercial property. Higgins also testified that prior to' the taking, he showed the Howard property to several industrial prospects. MTC objected to Higgins’s testimony on the ground of relevancy, arguing the testimony was irrelevant, immaterial, and had no value' for determining the highest and best use of the Howard property. The court overruled the objection, stating that the testimony would be allowed for the limited purpose of proving demand for the Howard property and not for the purpose of determining the fair' market value of the property. Higgins named several Industrial companies to which he showed the Howard property prior to the date of the taking, and also stated how the Howard property was suitable. Higgins testified that because the Howard property had access to a high voltage power line, a natural gas line, a rail line, and a mile of highway frontage, the property would be beneficial to industrial prospects.
-¶ 10. MTC renewed its motion prior to Rhett’s testimony. The court overruled the motion, and allowed Rhett’s testimony for the limited purpose of proving demand. Rhett,. a Lowndes County realtor, testified that prior to the taking, he showed the Howard property to a client, Delta Industries, for the purpose of establishing a cement plant. After learning the property was not for sale, Delta Industries purchased a tract of land approximately one-quarter of a mile away from the Howard property.
¶ 11. The trial court cited Clark v. Mississippi Transportation Commission, 767 So.2d 173, 175-76 (¶ 10) (Miss.2000) to explain why the limited testimony from Higgins and Rhett was allowed. Clark states in relevant part:
There must be some probability that the' land would be used within a reasonable time for the particular use to which it is adapted ... There must be a present demand for the land for such purposes or a reasonable expectation of such demand in the near future.
Id. at 175 (¶ 10) (citation omitted). MTC claims the trial court incorrectly applied Cla/rk to the’ present case because there was no present demand for the Howard property;' Specifically, MTC argues that merely showing the property to prospective buyers, absent any concrete action on the part of the- Howards to demonstrate that the property is being prepared for industrial use, is insufficient to prove a *784 present demand for the land for that purpose; therefore, the testimony of Higgins and Rhett should not have been allowed.
¶ 12. However, it was established during trial that the Howard property -was already suitable for industrial use and no further action by the Howards was needed. The property bounded' a United States Highway, a gas company, and a railroad. In addition, the property had access to a high voltage power line. These characteristics, alone, show that the Howard property was suitable for industrial use. This, compounded with showing the property to prospective buyers for commercial and industrial purposes, indicates that the Howard property was marketable as industrial property. Thus, the testimony offered by Higgins and Rhett was sufficient to prove a present demand for the property for industrial use. Based on these facts, the trial court correctly applied the legal standard in Clark in admitting the testimony for the purpose of proving demand of. the Howard property. This issue is without merit.
II. Whether the testimony of Higgins and Rhett was irrelevant and immaterial to this proceeding.
¶ 13. MTC argues the testimony offered by Higgins and Rhett was irrelevant and immaterial, and the trial court erred by allowing the testimony. MTC raises issues one and two separately because the issues are decided under different standards of review. The standard of review for the admission or exclusion of testimony is abuse of discretion. Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 34 (¶4) (Miss.2003). “Unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion, [the trial court’s] decision will stand.” Crane Co. v. Kitzinger, 860 So.2d 1196, 1201 (¶ 20) (Miss.2003).
¶ 14. A review of the record shows that the testimony offered by Higgins and Rhett was both relevant and material to the issues in this1 case. The appraisers’ opinions differed as to the highest'and best use of the • Howard property. Smith, MTC’s appraiser, categorized the property’s highest and best use as rural residential and agricultural. Holcombe, appraiser for the Howards, classified the highest and best use of the property as light industrial, secondary commercial.
¶ 15. In eminent domain proceedings, the “[l]and sought to be condemned should be appraised with reference to any use to which it is reasonably adapted, and therefore, the best or most valuable use to which the property could reasonably be expected to be adapted is the use which should be considered, regardless of the current use of the property.” Fires, 693 So.2d at 922. At the time of the taking, the Howard property was used as a cattle farm. However, as discussed above, there was ample evidence to show that the Howard property was also suitable for industrial purposes. One of the core, disputes in this case was the determination of the best and most valuable use of the Howard property. It follows that any evidence showing there was a demand for the property for purposes other than its current use is highly relevant and ■ material. The trial court did not abuse its discretion in allowing the testimony of Higgins and Rhett. Accordingly, this, issue is without merit.
III. Whether the trial court erred in refusing jury instruction P-14.
,.¶16. Next, MTC argues, the trial court erred in refusing jury instruction P-14 regarding,-the jury’s assessment of the appraisers’ testimonies. Jury instruction P-14 states:
The Court instructs the Jury that an appraiser’s testimony as it relates to *785 damages and fair market value of the subject property must be based upon sufficient facts or data, be the product of reliable principles and methods, and not based on speculation or guesswork of the appraiser. If it is your opinion that any part of an appraiser’s testimony in this case was not supported by sufficient facts or data, or was not the product of reliable principles or methods, you should disregard any such testimony of that appraiser.
The trial court refused the proposed jury instruction, stating that instructions as to how the jury must evaluate the evidence and assess the testimony were fairly covered in other instructions.
¶ 17. Jury instructions are to be read as a whole, and the trial court is given considerable discretion in instructing the jury. Bickham v. Grant, 861 So.2d 299, 301 (¶ 8) (Miss.2003). “[T]he trial court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Young v. Guild, 7 So.3d 251, 259 (¶ 23) (Miss.2009). “[I]f other instructions granted adequately instruct the jury, a party may not complain of a refused instruction on appeal.” Id. at (¶24) (citing Southland Enters., Inc. v. Newton Cnty., 838 So.2d 286, 289 (¶ 9) (Miss.2003)).
¶ 18. Although jury instruction P-14 is a correct statement of law, a review of the record shows that the language in the instruction regarding how to assess the weight and credibility of the witnesses’ testimonies was' fairly covered in .other instructions. In addition, there were multiple instructions given informing the jury that the verdict should not be based upon “speculation, guesswork, or conjecture.” For this reason, the trial court did not err in refusing jury instruction P-14; This issue is without merit.
IV. Whether the trial court erred in admitting the Scarbrough sale into evidence as a comparable sale to the Howard property.
¶ 19. MTC claims the trial court committed reversible error by admitting into evidence the sale of the Scarbrough property as a comparable sale to the Howard property. As previously discussed, the admission or exclusion of evidence is in the discretion of the trial court, and unless the trial court abused that discretion, the decision will stand. Crane Co., 860 So.2d at 1201 (¶ 20).
¶ 20. During trial, Holcombe presented five sales of property in support of his opinion on the value of just compensation for the Howard property, including two of which MTC claims to be incomparable sales. The Scarbrough sale, which was one of the sales presented by Holcombe, had an adjacent property with a highest and best use of heavy industrial. Holcom-be testified that despite the properties’ differences in highest and best use, the Scarbrough property and the Howard property had many similarities. Holcombe also testified that there was no separate distinction between heavy industrial and light industrial, secondary commercial because the two categories can overlap. The trial court allowed the testimony of the Scarbrough sale over MTC’s objection.
¶ 21. During trial, Holcombe testified that of the Howards’ remaining 64.85 acres after the taking, 3.52 acres remaining east of Highway 45 were worthless. Holcombe testified that the 3.52 acres had no value after the taking because of its location, and attributed to the entire amount of $101,331.80 in damages to the remainder. Counsel for MTC argued Holcombe’s calculations were not based on reliable principles and methods, and that Holcombe *786 failed to adhere to the standard before and after rule.
¶22. The Scarbrough property had a highest and best use of heavy industrial. According to MTC, .Holcombe should not have been allowed to present the Scarb-rough sale as a comparable sale to the Howard property because the two properties differed in highest and best use. The Mississippi Supreme Court has held that “[i]n using comparable sales as a method of valuation, this Court does not require that the comparable' sales be identical in every aspect/’ Miss. State Highway Comm’n v. Franklin Cnty, Timber Co., 488 So.2d 782, 785 (Miss.1986).
 ¶23. It is important to note that a piece of property can have more than one use, and the value does not. have to be calculated based solely on its dominant use. Oughton v. Gaddis, 683 So.2d. 390, 395 (Miss.1996). “The [trial] court is not limited to just the property’s highest and best use for the moment, but may consider the value of the property with reference to any use for which the property is reasonably adaptable.’’ Id. at 394. Needless to say, MTC’s expert and Howard’s expert disagreed as to the property’s highest and best use classification of the property. During trial, Holcombe testified that there is no separate distinction between heavy industrial and light industrial, secondary commercial because the two categories can overlap.' Also, Holcombe’s testimony revealed additional reasons why the Scarbrough property may be considered comparable .to the Howards, in spite of the properties’ different classifications. Holcombe stated that both properties were similar in rolling, topography, both properties bounded highway frontage roads, and both properties were previously used as cattle farms. ‘ ,
¶ 24. “The trial judge has wide discretion in allowing testimony of comparable sales, and this Court encourages the judge to allow liberal cross-examination to permit testing of the true utility of the comparable sales.” Fires, 693 So.2d at 928 (citing Highway Dev. Co. v. Miss. State Highway Comm’n, 343 So.2d 477, 481 (Miss.1977)). During, both cross-examination and voir dire, counsel for MTC thoroughly interrogated Holcombe about the five sales Holcombe presented as comparable to the Howard property, including the Scarbrough sale.
¶ 25. Given the similarities between the Scarbrough and Howard properties, and given the fact that MTC was allowed a thorough cross-examination to test the true utility of the two sales, we cannot say that the trial judge abused her discretion by admitting the Scarbrough sale into evidence as comparable to the Howard property. Accordingly, this issue is without merit.
V. Whether the trial court erred in allowing Holcombe’s testimony as to the fair market value of the Howard property.
¶26. MTC argues that the trial court erred in allowing Holcombe’s expert testimony because his calculations for just compensation deviated from the before- and-after rule, and were not based on reliable principles and methods. Since this issue is a question of law regarding whether the proper legal standard was applied, the standard of review is de novo. Fires, 693 So.2d at 920.
¶27. In Mississippi, the beforo- and-after rule is.used to determine the value of just compensation due to a landowner when a portion of his property is condemned through eminent domain. Blanton v. Bd. of Sup’rs of Copiah Cnty., 720 So.2d 190, 193 (¶ 18) (Miss.1998) (citing Miss. State Highway Comm’n v. Hillman, *787 189 Miss. 850, 198 So. 565, 568 (1940)). Under the before-and-after rule, the landowner is awarded the difference between the fair market value of the entire tract, of land immediately before the taking and the fair market value of that remaining immediately after the taking. Id.
¶28. Holcombe determined the fair market value of the Howard property before the taking to be.$3,200,000, and the value after the taking to be $1,745,469.68, resulting in $1,454,530.32 in just compensation for. the Howards. MTC. argues, that Holcombe’s calculation, of the fair market value .after the taking was not based on reliable principles and methods; therefore, his value of just compensation deviated from the before-and-after rule. During trial, Holcombe stated that after the tak-iiig, 3.52 of the remaining 64.85 acres of the Howard property had no value because of its location, and- constituted the entire amount of $101,331.80 in damages to the remainder. Holcombe testified that the amount of damages equals the before value minus the value of the part taken minus the after value.
¶ 29. Counsel for MTC asked Holcombe to write his calculations on a board to show the jury how he arrived at his figure for damages. Holcombe wrote $3,200,000 minus $1,838,141.25 minus $1,765,526.95 and arrived at $101,331.80 in damages. 'Hol-combe testified that to get the after value, he multiplied the property’s per- acre value of $28,787.38 by 61.33, which was the amount of usable acres remaining after the taking. Based on this calculation, Holcom-be’s after value was $1,765,528.95. From this fipre, Holcombe subtracted the .total amount for fencing replacement, temporary water replacement, and temporary easement, which totaled $20,057.27. After subtracting $20,057.27 from $1,765,526.95, Holcombe arrived at $1,745,469.68 as the fair market value of the remaining property after the taking. Holcombe then subtracted this figure from $3,200,000,, the before value of the property, arriving at $1,454,530.32 in just compensation.
¶ 30. Based on these calculations; it is clear that Holcombe followed the before- and-after rule in arriving at his value for just compensation. The trial court did not abuse its discretion in allowing Holcombe’s expert testimony regarding the fair market value of the Howard property. This issue is without merit.
VI. Whether the trial court erred in allowing testimony of incomparable sales, and compounded the error by granting. jury instruction D-13.
¶ 31. In its sixth issue, MTC reiterates its argument in issue four that the trial court erred in admitting testimony of incomparable sales. According to MTC, four of the sales presented by Holcombe were incomparable because the properties were much smaller than the Howard property. MTC claims that the trial court abused its discretion by allowing Holcombe to testify about sales, and compounded the error by granting jury instruction D-13 regarding the size of land. Instruction D-13 states:
The Court instructs the jury that the land with which the subject property is being compared does not have to be of the same size or acreage, or approximately so, if the other criteria essential to a fair comparison are present, for to hold otherwise would make it impossible to find a comparable tract of land or a sale which could be used as a means of evaluating the fair market , value of due compensation..
¶ 32. In- its brief, MTC acknowledges that instruction D-13 is a correct statement of law, but claims that the trial court erred in granting the instruction because it *788 improperly emphasized that the size of the properties shown-by Holcombe as comparable sales could be much smaller than the size of the Howard property.
¶ 33. As previously mentioned in issue four, comparable sales do not have to be identical in every aspect in' order for the sales to be valid as comparable, and the trial judge has wide discretion in allowing testimony of comparable sales-. Franklin Cnty. Timber Co., 488 So.2d at 785. Furthermore, jury instruction D-13 is a correct statement of law, taken directly from a prior eminent domain case in the Mississippi Supreme Court. See Fires, 693 So.2d at 920. Accordingly, this issue is without merit.
VII. Whether the trial court erred in granting jury instruction D-12 regarding the Howards’ desire to sell the property.
¶ 34; MTC claims' the first sentence in jury instruction D-12 was a prejudicial statement designed to create sympathy for the Howards by suggesting that the Howards were, forced to sell their property. The instruction reads: .
In the present case, the Howards may not' have desired to sell the property taken. However[,] the fair market value of the property taken in this case must be determined as if the Howards had been willing to sell such property at the time of the taking on October 16, 2008.
¶35. MTC objected to the first sentence of the instruction, arguing that other jury instructions covered a willing seller, and instruction D-12 was not warranted by the evidence. It is accurate that other instructions given mentioned a willing seller and a willing buyer. However, a review of the record shows the purpose of those instructions was to provide the jury with a definition of fair market value. Those instructions did not address how the How-ards’ willingness to sell their property should affect the jury’s assessment of damages.
¶ 36. During trial, Rhett stated that after showing the Howard property to Delta Industries, he learned that the Howards did not want to sell their property. Counsel for the Howards contend the entire instruction was necessary to properly instruct the jury that just compensation should not be affected by whether or not the Howards desired to sell their property. Because testimony was elicited suggesting the Howards did not want to sell their property, jury instruction D-12; in its entirety, was warranted by the evidence.
¶ 37. As previously discussed, the trial court possesses considerable discretion regarding jury instructions. Young, 7 So.3d at 259 (¶ 23) (citing Bickham, 861 So.2d at 301 (¶8)). In this case,, the jury instructions, considered as a whole, fairly and adequately instructed the jury on the applicable primary rules of. law. The trial court did not abuse its discretion in granting instruction D-12 in its entirety. Accordingly, this issue is without merit.
.. VIII. Whether the trial court erred in denying MTC’s motion for a new trial.
¶ 38. MTC claims the trial court erred in denying its motion for a new trial because the jury verdict was not supported by the evidence. The standard of review for the grant or denial of a motion for a new trial is abuse of discretion. United Servs. Auto. Ass’n v. Lisanby, 47 So.3d 1172, 1176 (¶ 9) (Miss.2010) (citing White v. Yellow Freight Sys., Inc., 905 So.2d 506, 510 (¶7) (Miss.2004)). In reviewing the trial court’s denial of a motion for a new trial, this Court must consider the evidence in the light most favorable to the non-moving party. White, 905 So.2d at *789 510-511 (¶ 7) (citing Green v. Grant, 641 So.2d 1203, 1207 (Miss.1994)). We will only reverse when, after reviewing the record, it is found that allowing the verdict to stand would sanction a miscarriage of justice. Id. at 511 (¶ 7).
¶ 39. In this case, the jury heard testimony from both expert appraisers regarding just compensation for the Howard property. Both experts were subject to thorough cross-examination to test the true utility of the comparable sales presented. In addition, the jury traveled to the site to personally view the Howard property. The Mississippi Supreme Court has held that courts are reluctant “to disturb a jury’s eminent domain award where ... the jury has personally viewed the premises.” Miss. Transp. Comm’n v. Bridgforth, 709 So.2d 430, 441 (¶ 35) (Miss.1998) (citing Ellis v. Miss. State Highway Comm’n, 487 So.2d 1339, 1342 (Miss.1986)). “[Wjhere the jury has viewed the property being taken, any substantial evidence in the record supporting the jury’s damage assessment will preclude reversal in this Court.” Id. (citing Franklin Cnty. Timber Co., 488 So.2d at 787).
¶ 40. A review of the record shows there was substantial credible evidence to support the jury’s award. The Howards’ appraiser submitted five comparable sales supporting a highest and best use of light industrial, secondary commercial. Testimony was offered showing there was a present demand for the Howard property for industrial use. Holcombe provided the jury with his calculations to show how he arrived at his value for just compensation. The record also shows the jury award did not evidence bias, passion, or prejudice. Smith calculated just compensation for the Howards as $189,300. Holcombe calculated just compensation as $1,454,530.32. The jury’s assessments $604,760 was less than the average of the two figures. In considering the evidence in the light most favorable to the non-moving party, wé cannot say that allowing the verdict to stand would sanction a miscarriage of justice. The trial court properly denied MTC’s motion for a new trial because the jury verdict was well-supported by the evidence. This issue is without merit.
¶ 41. Finding no error in the proceedings below, we affirm the jury award of $604,760 in just compensation to the How-ards.
¶ 42. THE JUDGMENT OF THE SPECIAL COURT OF EMINENT DOMAIN OF LOWNDES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. GRIFFIS, P.J., AND BARNES, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. the additional element of damages did not affect the amount of just compensation listed in MTC’s statement of value, which was $189,300.

. MTC mentions-in its brief that this eviden-tiary ruling should have been made outside the presence of the jury, but fails to discuss any prejudicial effect of the trial court’s ruling in bpen court. MTC' further states that this issue, is not about the court's ruling occurring in front of the jury, but about the court’s reasoning,and law used in allowing the testimony. Therefore, our discussion of this issue will only consist of the Court’s admission of the testimony.