# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00176-COA

**MISSISSIPPI DEPARTMENT OF REHABILITATION SERVICES AND ROBIN STRICKLIN**

APPELLANTS/CROSS-APPELLEES

**v.**

**CARLA BUTLER AND STEVEN BUTLER, INDIVIDUALLY AND ON BEHALF OF J.B., A MINOR**

APPELLEES/CROSS-APPELLANTS

| | |
|---|---|
| DATE OF JUDGMENT: | 09/21/2021 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | RICHARD T. CONRAD III |
| ATTORNEYS FOR APPELLEES: | JOHN W. KITCHENS |
| | EDGAR ZACHARIAH ADKINS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART - 01/09/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1. Individually and on behalf of their minor son, Carla and Steven Butler (collectively, the Butlers) sued the Mississippi Department of Rehabilitation Services (MDRS) and Robin Stricklin for injuries Carla sustained when Stricklin's car collided with the rear of the Butlers' truck as Carla drove through a traffic circle. Following a bench trial, the Rankin County Circuit Court found that Stricklin's negligence had solely and proximately caused the collision, Stricklin was acting within the course and scope of her employment with MDRS

at the time of the collision, and MDRS was vicariously liable for Stricklin's negligence. The circuit court awarded the Butlers (jointly) $33,084 for the loss of their vehicle and awarded Carla (individually) $75,000 for medical expenses and non-economic damages, for a total of $108,084.

¶2.     Appealing the circuit court's findings of fact and conclusions of law and the denial of their post-trial motion, MDRS and Stricklin argue that the circuit court erred by denying their motion for an involuntary dismissal, finding certain testimony by the Butlers' expert witness reliable, admitting evidence of the Butlers' claims for damage to Carla's cell phone and wedding band, and awarding almost $53,000 in non-economic damages to Carla. The Butlers cross-appeal and argue that the circuit court erred by denying their post-trial motions to alter or amend the judgment and for an additur for Steven's loss-of-consortium claim.

¶3.     With regard to the appeal filed by MDRS and Stricklin, we find no error and affirm the circuit court's judgment. As to the Butlers' cross-appeal, we conclude the circuit court erred by failing to award monetary damages for the replacement of Carla's cell phone and the repair of her wedding band after specifically finding that the Butlers jointly incurred these damages as a result of the collision. We therefore reverse the circuit court's denial of a monetary award for these damages and render a judgment in the Butlers' favor for $1,093. We further find the Butlers presented sufficient evidence to support an additur for Steven's loss-of-consortium claim. We therefore reverse the circuit court's denial of the additur and remand to allow the circuit court to determine an appropriate amount to award Steven for his loss-of-consortium claim.

2

# FACTS

¶4. On the morning of June 3, 2015, Stricklin's car collided with the Butlers' truck as Carla drove the truck through a traffic circle on her way to pick up Steven from the Jackson-Medgar Wiley Evers International Airport. Stricklin, who was headed to deliver a projector to a coworker, struck the rear passenger side of the Butlers' truck, which caused the truck to flip over and skid upside down along the roadway. After emergency personnel arrived at the scene, they transported Carla to Merit Health River Oaks Hospital (River Oaks). Carla, who is left-hand dominant, received treatment at River Oaks for multiple injuries to the left side of her body, including a laceration to her left arm, abrasions to and glass embedded in her left arm and hand, a sprain to her left hand, and bruises along the left side of her body. Because Carla was seven months pregnant at the time of the collision, she was later transferred to Merit Health Woman's Hospital for additional treatment and testing to ascertain her well-being and the well-being of the Butlers' unborn child.[1]

¶5. The Butlers, individually and on behalf of their minor son J.B., sued MDRS and Stricklin for the injuries that Carla had sustained due to the collision. At an August 17, 2021 bench trial held by the circuit court, Steven testified about the aftermath of the collision and the impact the collision had made on Carla's daily life and the couple's marriage. Carla also testified about these matters and described the circumstances leading up to the collision itself.

¶6. In recollecting her movements and observations as she approached the traffic circle

---

[1] Carla and Steven both testified at trial that their son was later born without any identifiable injuries caused by the collision and, in the years since the accident, had achieved all his developmental milestones.

before the collision, Carla stated,

> I came down the on-ramp. . . . [T]here was no traffic anywhere in my way. I slowed to yield at the yield sign and proceeded to enter the roundabout and proceeded around that curve, and as I was passing the entrance where Ms. Stricklin would be entering, I noticed it seemed like she was coming in awfully fast; and I didn't think that she was going to be able to stop. And so I increased my speed a little bit [thinking], you know, maybe I could miss getting hit, and that didn't work.

¶7. Carla testified that she did not know her exact speed after she increased it in an attempt to avoid the collision. She explained that after the collision, she informed the responding officer that she did not know her speed. When the officer pressured her to provide an exact number, however, Carla reported that she had "sped up a little bit to try to avoid the collision, but there's no way [she] was going faster than 30" miles per hour (mph).

¶8. Stricklin testified on behalf of herself and MDRS and provided her own recollection of the events leading to the collision. Stricklin stated that as she approached the traffic circle, she remembered seeing a vehicle speed through the intersection ahead of her. She testified that she did not stop as she approached the traffic circle but did slow down to yield to any oncoming traffic. She stated that she looked left and right before entering the traffic circle but did not observe any vehicles close enough to collide with her car. Stricklin testified, "I did not see [Carla] until my car and hers collided, and all I could describe to anybody was it was like her . . . truck was lifting toward me at the point in time I saw her." According to Stricklin, the first time she observed Carla's truck was once the vehicle was "right in front of [her] windshield . . . ."

¶9. Stricklin stated that she could not provide any information as to Carla's speed at the

time of the collision. Stricklin testified that she believed she had entered the traffic circle first because she "did not see anything in [her] peripheral vision that was anywhere near" her when she entered. She also testified that she did not know where her car impacted Carla's truck because all she saw was "a white blur."

¶10. Jason Walton, whom the Butlers designated as their expert witness, also testified during the trial. Without any voir dire or objection from MDRS and Stricklin, the circuit court accepted Walton as an expert in accident reconstruction. Walton testified that he had previously worked as a patrol officer for the Mississippi Highway Patrol. During his time at the Mississippi Highway Patrol, Walton attended accident-reconstruction courses. After about ten years with the Mississippi Highway Patrol, Walton left to begin his own accident-reconstruction firm.

¶11. Based on all the documents and evidence he had reviewed, Walton concluded that Stricklin's actions in operating her vehicle solely caused the accident. Walton testified that photographs taken after the collision had depicted damage to the right rear side of the Butlers' truck and the front bumper of Stricklin's car. Walton determined that Stricklin's car had struck the right rear side of the Butlers' truck, which had caused the truck to flip over.

¶12. The documents Walton reviewed had provided that the posted speed limit for the traffic circle was 10 mph. The accident report completed by the responding officer had listed Stricklin's speed as 10 mph and Carla's speed as 30 mph at the time of the collision. Based on the information contained in the accident report, Walton performed a series of calculations in which he kept Stricklin's speed at 10 mph throughout the analysis but varied Carla's speed

in the traffic circle from 10 mph, to 15 mph, to 25 mph, and finally to 30 mph. Walton testified that the calculations and formulas he used were "the accepted methodology in the field of accident reconstruction" and would yield results that were "within a reasonable degree of scientific certainty." Walton stated, "[I]n my analysis[,] I found out that the critical speed of that curve [through the traffic circle] was 25 miles an hour." Walton explained that "the critical speed of a curve is the fastest that you can go in that curve without your vehicle starting to lose traction or . . . the rear tires start[ing] to lose traction with the roadway." He stated, however, that there was no proof that Carla's speed while traveling through the traffic circle had contributed to the accident.

¶13. Walton testified that even if Carla had entered the traffic circle at a constant speed of 30 mph, then Stricklin's car, traveling at 10 mph, would still have been at least 30 feet from entering the traffic circle. Walton stated that in such a scenario, Carla's truck would have entered the traffic circle first and would have fully gained the right-of-way so that Stricklin's car, which would not yet have entered the traffic circle, clearly would have had to yield to Carla's oncoming truck. Thus, Walton concluded:

> [W]hether you place [Carla] at 10 all the way up to 30 [mph], she always is able to enter the intersection before Stricklin can even get to the intersection. So [Carla] always has the right-of-way no matter what speed or range we're at[,] from[] 10 all the way up to 30 [mph].

¶14. Walton stated a scenario could exist in which Stricklin had entered the traffic circle before Carla. He further stated, though, that in such a scenario, the two vehicles would not have collided the way they did with Stricklin's car striking the rear of Carla's truck. In fact, Walton testified that "Stricklin would then be through the intersection before [Carla] would

6

even get to her." Walton explained that

> in a scenario where Stricklin enters first and [Carla] enters second, they cannot have the crash damage of the vehicles exhibited in the photographs. They cannot collide the way that they did if Stricklin enters first. So that's another way to show that [Carla] had to have control of the intersection. She had to have entered first prior to Stricklin.

¶15.  Walton further discounted such a scenario by testifying as follows:

> [Carla] has to go 121 feet [to reach the area of impact]. That's a fact. . . . Stricklin only has to go between 8 and 10 feet.
>
> So, again, it would be outside of a reasonable degree of scientific certainty because it's a scenario where Stricklin enters first and they still collide just like this because you would have to have [Carla's] speed at such an astronomical height that she'd never make these curves.

¶16.  At another point during his testimony, Walton reiterated that

> [i]f you start skewing these speeds real widely, you're going to come up with a completely different collision scenario that doesn't match the physical evidence to the vehicles, and it doesn't match the way [Carla] rotated and rolled over on her roof. Then if the physical evidence doesn't match, then you're outside the scope of being within a reasonable degree of scientific certainty.

¶17.  Walton stated that in the immediate area where the collision occurred, Stricklin would have had a clear and unobstructed line of sight as she approached the traffic circle. He testified that in his expert opinion, there was no doubt as to the cause of the accident. Based on his calculations and his review of the documents and evidence provided to him, Walton concluded that "no matter if you place [Carla driving] from 10 all the way up to 30 [mph], . . . Stricklin still cannot enter the intersection before [Carla] does[,]" and Carla therefore always had "the legal right-of-way."

¶18.  On September 21, 2021, the circuit court entered its findings of fact and conclusions

7

of law. The circuit court found that Carla "had the right-of-way at the time of the collision" and that Stricklin had "failed to yield" to Carla's oncoming vehicle. As a result of its findings, the circuit court concluded that Stricklin's actions constituted "the sole and proximate cause of the collision . . . ." Because Stricklin had been acting within the course and scope of her employment for MDRS at the time of the collision, the circuit court held MDRS vicariously liable for Stricklin's negligence. The circuit court awarded the Butlers (jointly) $33,084 for the loss of their vehicle and Carla (individually) $75,000, for a total monetary judgment of $108,084.

¶19. MDRS and Stricklin filed a post-trial motion to amend the findings of fact and conclusions of law or, alternatively, for a new trial. The Butlers filed their own post-trial motion to alter or amend the judgment and for an additur. Following a hearing, the circuit court entered an order on February 7, 2022, and denied the parties' respective motions. Aggrieved by the circuit court's September 21, 2021 findings of fact and conclusions of law and its February 7, 2022 order denying their post-trial motion, MDRS and Stricklin appealed. The Butlers cross-appealed.

**STANDARD OF REVIEW**

¶20. "In reviewing the decision of a trial judge sitting without a jury, this Court may only reverse when the findings of the trial judge are manifestly wrong or clearly erroneous." *S. Cent. Reg'l Med. Ctr. v. Regan*, 303 So. 3d 432, 438 (¶7) (Miss. Ct. App. 2020) (quoting *Greenwood Leflore Hosp. v. Bennett*, 276 So. 3d 1174, 1178 (¶10) (Miss. Ct. App. 2018)). Thus, we decline to reverse a trial judge's factual findings if "they are supported by

8

'substantial, credible, and reasonable evidence.'" *Mauldin Co. v. Turnage*, 332 So. 3d 331, 335 (¶6) (Miss. Ct. App. 2021) (quoting *City of Jackson v. Presley*, 40 So. 3d 520, 522 (¶9) (Miss. 2010)).  We review questions of law de novo.  *Regan*, 303 So. 3d at 438 (¶7).

## DISCUSSION

### I. Motion for Involuntary Dismissal

¶21.  At the close of the Butlers' case-in-chief, MDRS and Stricklin moved for an involuntary dismissal under Mississippi Rule of Civil Procedure 41(b).  They renewed their motion at the close of all the evidence.  Both times, the circuit court denied the motion, and in their appellate brief, MDRS and Stricklin contend the denial of their motion for an involuntary dismissal was error.

¶22.  As we recently reiterated,

> [i]n both jury and non-jury cases, civil and criminal, [Mississippi appellate courts] have repeatedly held that where a defending or responding party, following the overruling of a motion for a directed verdict or a motion to dismiss, goes forward with evidence of his own, he waives the right to assign on appeal error in the failure of the trial judge to grant his motion.

*Simpson Cnty. Sch. Dist. v. Wigley*, 356 So. 3d 147, 154 (¶20) (Miss. Ct. App. 2022) (quoting *PACCAR Fin. Corp. v. Howard*, 615 So. 2d 583, 586-87 (Miss. 1993)).  Here, Stricklin testified on behalf of herself and MDRS following the circuit court's denial of the motion for an involuntary dismissal.  As a result, we find that MDRS and Stricklin have waived their "right to challenge the [circuit] court's denial of [their] Rule 41(b) motion as error on appeal." *Id.*

### II. Reliability of Walton's Expert Testimony

¶23.    MDRS and Stricklin also challenge the circuit court's reliance on the testimony of the Butlers' accident-reconstruction expert Walton.   They do not contest Walton's expert qualifications or the relevance of his testimony.   Instead, they argue that the circuit court erred by finding as "credible and persuasive" Walton's opinion regarding Carla's speed at the time of the collision.

¶24.    We review the admission or exclusion of expert testimony for abuse of discretion. *Thomas v. Shed 53 LLC*, 331 So. 3d 66, 73 (¶24) (Miss. Ct. App. 2021).  To be admissible, expert testimony must be both relevant and reliable.  MRE 702.  With regard to the reliability prong, Rule 702 provides that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: . . . [(1)] the testimony is based on sufficient facts or data; [(2)] the testimony is the product of reliable principles and methods; and [(3)] the expert has reliably applied the principles and methods to the facts of the case.

*Id.*

¶25.    "In examining the reliability of an expert's opinions and methods," a trial court should consider the following non-exhaustive list of factors:

> whether the theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique's operation; and whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Thomas*, 331 So. 3d at 73-74 (¶25) (quoting *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 37 (¶13) (Miss. 2003)).  "Ultimately, an expert's opinion is reliable if it is grounded in 'the methods and procedures of science, not merely his subjective beliefs or unsupported

10

speculation.'" *Fields v. Gulf Publ'g Co.*, 284 So. 3d 876, 883 (¶17) (Miss. Ct. App. 2019) (quoting *McLemore*, 863 So. 2d at 36 (¶11)).

¶26. In designating Walton as their accident-reconstruction expert, the Butlers stated that he was "expected to testify, within a reasonable degree of scientific probability, . . . that [Stricklin's] actions/inactions . . . were the sole proximate cause of the collision and [that] there [was] no evidence that Carla Butler proximately contributed to . . . the collision." As stated, MDRS and Stricklin only assert that the circuit court erred by relying on a certain portion of Walton's testimony. Specifically, they argue that the circuit court erred by finding as "credible and persuasive" Walton's opinion that Carla "could not have been [driving] faster than 25 mph" through the traffic circle when the collision occurred. According to MDRS and Stricklin, there was evidence to support a finding that Carla might have been driving faster than 25 mph. As a result, they assert that the circuit court erred by finding Walton's opinion on this issue reliable.

¶27. Before performing his investigation and forming his conclusions and opinions, Walton reviewed all the documents provided to him. As set forth in the Butlers' designation of their expert witnesses, these documents included the following:

> [T]he Uniform Crash Report, depositions, photographs, damage reports and other information concerning the vehicles involved, available online visual imagery of the scene, both historical and current, rules of the road and other relevant rules, regulations, and standards, and photographs, reports and/or descriptions of the injuries and other damages sustained in the collision . . . .

¶28. To aid his investigation and analysis, Walton used computer software to create visual reproductions of the collision and the crash scene. Without any objection, the circuit court

11

admitted these documents into evidence. Walton testified that he also used computer software to help him determine "the critical speed" of the traffic circle's curve. As previously discussed, Walton explained this term when he testified that "the critical speed of a curve is the fastest that you can go in that curve without your vehicle starting to lose traction or . . . the rear tires start[ing] to lose traction with the roadway." Walton stated that the "calculations and formulas" he used in his analysis were "the accepted methodology in the field of accident reconstruction" and yielded results that were "within a reasonable degree of scientific certainty." Based on his calculations, Walton determined that "the critical speed of that curve [through the traffic circle] was 25 miles an hour."

¶29. As stated above, Walton testified there was no evidence to suggest that Carla was exceeding the critical speed of the traffic circle's curve at the time of the collision or that her speed contributed to the accident. Even so, Walton performed a series of calculations in which he varied Carla's speed from 10 to 30 mph while maintaining Stricklin's speed at a constant rate of 10 mph. Walton stated that in each scenario, Carla's vehicle entered the traffic circle first and clearly gained the right-of-way prior to Stricklin's vehicle reaching the intersection. Walton further stated that if one began to apply a higher rate of speed to Carla's vehicle, then her truck would have completed "multiple rolls" and would not have rolled over in "a tight rotation" like it did following the collision "because there would be a lot more momentum involved."

¶30. In performing his analysis, Walton used the rates of speed that Carla and Stricklin provided to the responding officer at the crash site. This information was then included in

the officer's crash report. As previously noted, Carla testified that she initially told the officer she did not know her speed and that she eventually only reported her speed as no more than 30 mph after the officer pressured her to provide a specific number. No other testimony was given regarding Carla's speed at the time of the collision, and Stricklin herself testified that she could not provide any information as to Carla's speed through the intersection. In addition, Walton opined that no evidence suggested Carla was exceeding the critical speed of the traffic circle's curve of 25 mph.

¶31. Based on a review of the record, we find no abuse of discretion in the circuit court's reliance on Walton's expert testimony. "The weight and credibility of expert testimony are matters for determination by the trier of fact. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are traditional and appropriate means of attacking shaky but admissible evidence." *Stuart v. St. Dominic-Jackson Mem'l Hosp.*, 311 So. 3d 1192, 1204 (¶60) (Miss. Ct. App. 2020) (quoting *Hubbard ex rel. Hubbard v. McDonald's Corp.*, 41 So. 3d 670, 675 (¶19) (Miss. 2010)). Here, MDRS and Stricklin had ample opportunity to cross-examine Walton as to the reliability of his opinions and methods and to present evidence to contradict his findings. The only evidence provided at trial, however, supported Walton's expert opinions and conclusions. Walton sufficiently testified as to the facts and data that formed the basis of his opinions, the reliability of the principles and methods he applied to the circumstances surrounding the collision, and the accuracy of his calculations and analysis. Thus, the record reflects that Walton's expert opinions were "grounded in 'the methods and procedures of

science, not merely his subjective beliefs or unsupported speculation.'" *Fields*, 284 So. 3d at 883 (¶17) (quoting *McLemore*, 863 So. 2d at 36 (¶11)). We therefore find no error in the circuit court's admission of and reliance on Walton's expert testimony.

### III. Damage Claims for Carla's Cell Phone and Wedding Band

¶32. MDRS and Stricklin argue that the circuit court erroneously admitted and considered testimony and other evidence regarding damage caused by the collision to Carla's cell phone and wedding band. MDRS and Stricklin concede, however, that they failed to object to these damage claims before the circuit court and have raised this assignment of error for the first time on appeal. Also with regard to these claims, the Butlers assert on cross-appeal that the circuit court erred by failing to award them damages for Carla's cell phone and wedding band. Due to the related nature of these arguments, we address them together.

¶33. As we have repeatedly held,

> [i]t is well-settled that issues presented for the first time on appeal are procedurally barred from consideration. One of the most fundamental and long[-]established rules of law in Mississippi is that an appellate court will not review matters on appeal that were not raised at the trial court level.

*Leverett v. Leverett*, 309 So. 3d 116, 121-22 (¶19) (Miss. Ct. App. 2020) (quoting *Hoffman v. Hoffman*, 270 So. 3d 1121, 1128 (¶32) (Miss. Ct. App. 2018)). Based on MDRS and Stricklin's own admissions that they failed to object to the Butlers' claim for damages for Carla's wedding band and cell phone or to otherwise raise the issue before the circuit court, we find this alleged assignment of error has been waived.

¶34. As to the Butlers' assertion of error on cross-appeal, we note that in its findings of fact and conclusions of law, the circuit court specifically found that the Butlers had jointly

14

incurred $1,093 in damages for the replacement of Carla's cell phone and the repair of her wedding band. Despite making these specific findings of fact, the circuit court failed to later award the Butlers monetary damages for these items. We find this was error. We therefore reverse the circuit court's denial of this request for damages and render a monetary judgment to the Butlers from MDRS and Stricklin for the $1,093 that the circuit court found they jointly incurred to replace Carla's cell phone and repair her wedding band.

### IV. Award of Non-Economic Damages to Carla

¶35. The circuit court awarded the Butlers a total of $108,084 in monetary damages. The award included $33,084 to the Butlers jointly for the loss of their vehicle. Of the remaining $75,000 awarded to Carla individually, MDRS and Stricklin do not dispute the $22,000.10 awarded for Carla's reasonably necessary medical expenses. Instead, they challenge the $52,999.90 that the circuit court awarded to Carla for non-economic damages. According to MDRS and Stricklin, the award of almost $53,000 in non-economic damages to Carla, individually, was excessive and unsupported by the trial testimony and evidence. They therefore assert that the circuit court erred by failing to grant their post-trial motion for a remittitur.

¶36. We review the denial of a remittitur for abuse of discretion. *MIMG C Woodridge Sub LLC v. Coursem*, 356 So. 3d 1246, 1251 (¶35) (Miss. Ct. App. 2023). In considering a party's request for a remittitur,

> [w]e will not disturb [the trier of fact's] award of damages unless its size, in comparison to the actual amount of damage, shocks the conscience. A remittitur is appropriate when either (1) the . . . trier of fact was influenced by bias, prejudice, or passion, or (2) the damages were contrary to the

overwhelming weight of the evidence. The bias, prejudice[,] or passion standard is purely a circumstantial standard. Evidence of corruption, passion, prejudice[,] or bias on the part of the [trier of fact] (if any) is an inference to be drawn from contrasting the amount of the verdict with the amount of the damages.

*Id.* (citations and internal quotation marks omitted).

¶37. The circuit court explicitly found that the trial testimony and evidence had shown the following: (1) the collision caused multiple injuries to the left side of Carla's body, including ongoing visible scarring to her left arm and pain in her left arm and hand; (2) Carla suffered mental and physical distress following the collision as she underwent observation and treatment to assess her health and the health of her unborn baby; (3) due to her pregnancy, Carla was unable to receive pain-relief medications, even as she had to have glass removed from her hand and arm; (4) Carla was unable to hold or otherwise care for her newborn son without assistance due to her injuries; and (5) her physical limitations significantly impacted her "mental well being during a crucial phase of parent-child development." The circuit court further found that "[t]he injuries caused by the wreck did not resolve when [Carla's] treatment ended. She continues to have difficulty doing daily tasks such as writing, brushing her hair, applying makeup, using a computer mouse, washing dishes, and other similar tasks."

¶38. As the circuit court found, the record clearly reflects Carla's testimony about her injuries, pain and suffering, ongoing physical impairments, and inability to perform routine tasks that were possible prior to the collision. Steven's testimony further corroborated the far-reaching consequences of the collision on the couple's lives. In light of the undisputed evidence that demonstrated Carla's pain, suffering, and loss of enjoyment of life as a direct

16

result of the collision, we cannot find that the circuit court erred by refusing to reduce its award of monetary damages to Carla. We therefore find no abuse of discretion in the circuit court's denial of MDRS and Stricklin's request for a remittitur.

### V. Additur for Steven's Loss-of-Consortium Claim

¶39. In their cross-appeal, the Butlers contend that the circuit court erred by failing to grant an additur for Steven's loss-of-consortium claim. As with the standard of review applicable to a remittitur, we review the circuit court's decision regarding an additur for abuse of discretion. *Regan*, 303 So. 3d at 443 (¶22).

¶40. "Each case involving the issue of an additur must 'necessarily be decided on its own facts.'" *Id.* (quoting *Green v. Grant*, 641 So. 2d 1203, 1208 (Miss. 1994)). To succeed,

> [t]he party seeking the additur has the burden of proving his injuries, damages[,] and loss of income. In determining whether this burden is met, the Court must view the evidence in the light most favorable to the defendant, giving that party all favorable inferences that reasonably may be drawn from them.

*Id.* (quoting *Green*, 641 So. 2d at 1208).

¶41. "[A] cause of action accruing to a party for loss of consortium is separate and distinct from that party's spouse suffering personal injury." *Rylee v. Progressive Gulf Ins. Co.*, 224 So. 3d 535, 538 (¶15) (Miss. 2017) (quoting *Coho Res. Inc. v. McCarthy*, 829 So. 2d 1, 22 (¶66) (Miss. 2002)). As the Mississippi Supreme Court has explained,

> [i]n *McCarthy*, we held that, to prove his or her "separate and distinct" cause of action, "the spouse seeking compensation for loss of consortium must show that he or she suffered damages *arising out of the other's injuries*." So according to *McCarthy*, a loss-of-consortium claim is both "separate and distinct" and derivative. It requires the claimant prove separate and distinct damages that derive from, or arise out of, the nonclaimant's bodily injuries.

*Id.* at (¶16) (quoting *McCarthy*, 829 So. 2d at 22 (¶66)).

¶42. The supreme court has clarified that the cause of action for loss of consortium recognizes a spouse's entitlement to the following in his or her marital relationship:

> [S]ociety, companionship, love, affection, aid, services, support, sexual relations, and the comfort of her husband [or] his wife as special rights and duties growing out of the marriage covenant. To these may be added the right to live together in the same house, to eat at the same table, and to participate together in the activities, duties[,] and responsibilities necessary to make a home. All of these are included in the broad term, "conjugal rights." The loss of consortium is the loss of any or all of these rights.

*Brent v. Mathis*, 154 So. 3d 842, 846-47 (¶10) (Miss. 2014) (quoting *Kirk v. Koch*, 607 So. 2d 1220, 1224 (Miss. 1992)).

¶43. Here, the record reflects, and the circuit court's own factual findings supported, that Steven proved "separate and distinct damages that derive[d] from, or ar[o]se out of, [Carla's] bodily injuries." *Rylee*, 224 So. 3d at 538 (¶16). Moreover, the record contains substantial credible evidence to show that Steven's damages were of the kind specifically encompassed by a claim for loss of consortium.

¶44. At trial, both Carla and Steven testified about the continuing pain and numbness Carla experienced in her hand after the accident, as well as her ongoing difficulty with daily tasks. Carla stated that her physical limitations had required Steven to provide much more help with their newborn son and that Steven had essentially taken on "the bulk of the childcare" for the first few months. As Carla testified, Steven "did a lot normally that I would have done, and even what I did[,] he helped with." The undisputed testimony reflected that Carla had needed Steven to assist her with everything from changing diapers and getting their son dressed to

18

helping her nurse because the pain and numbness in her hand prevented her from completing such tasks herself.

¶45. Even at the time of trial, Carla testified that she still experienced pain and numbness, as well as difficulty with tasks that required fine motor skills. She stated that although she could do some household chores such as vacuuming and washing most of the dishes, Steven had "taken over all of [the family's] laundry" and "cleaning the bathrooms" because she was no longer able to do those tasks after the accident.

¶46. For his part, Steven testified that the collision had completely changed the dynamic of his relationship with Carla. After the accident, Steven left his employment in the oil field due to his concerns over Carla. Steven stated that after the accident, he had needed "to take care of Carla because she couldn't do anything" for herself. He described how Carla had struggled even with simple day-to-day tasks like "[c]leaning herself sometimes, dressing herself, [and] cooking . . . ." Before the accident, Steven had only had "very limited" experience doing any of the household cooking, cleaning, or laundry. But after the collision, he had assumed full responsibility for all those household chores. According to Steven, the collision had caused such "a full life change" for the couple that he believed there was "no possible way [he] could ever work away from home again."

¶47. As previously discussed, the circuit court noted in its findings of fact the multiple injuries Carla had sustained due to the collision and the lingering impact of these injuries on her daily life and the Butlers' marriage. As the circuit court stated, due to her injuries, Carla "was unable to hold or otherwise care for [her newborn son] without assistance." The circuit

19

court found that this "inability to render care" had "greatly increased" Steven's "obligations to care for their newborn [baby]." The circuit court further found that even at the time of trial, Carla continued to experience pain in her left arm "that often can only be relieved when [Steven] massages her arm."

¶48. Despite its own factual findings and the substantial undisputed evidence that supported Steven's claim for loss of consortium, the circuit court abused its discretion in failing to award Steven any damages or to grant an additur for this claim. Even viewing the evidence in the light most favorable to MDRS and Stricklin, we find that Steven met his evidentiary burden to establish injuries and damages sufficient to warrant an additur. We therefore reverse the circuit court's denial of Steven's request for an additur and remand this case to allow the circuit court to determine the proper amount of an additur for Steven's loss of consortium.

## CONCLUSION

¶49. Upon review, we affirm the circuit court's judgment as to the issues raised by MDRS and Stricklin on direct appeal. With regard to the Butlers' cross-appeal, we reverse the circuit court's denial of their claim for damages related to the replacement of Carla's cell phone and the repair of her wedding band and render a monetary judgment in the Butlers' favor for $1,093. We also find the Butlers presented the requisite evidence to support Steven's claim for loss of consortium. We reverse the circuit court's denial of an additur for Steven's loss-of-consortium claim and remand to allow the circuit court to determine an appropriate amount for the additur.

20

¶50.    **ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. EMFINGER, J., NOT PARTICIPATING.**